STATE of Missouri,
Plaintiff-Respondent,

v.

Charles RAYFORD, Defendant-Appellant.

No. 44434.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 18, 1983.

Gary L. Breezeel, Cape Girardeau, for defendant-appellant.

John Ashcroft, Kristie Green, Jefferson City, Stephen Limbaugh, Jr., Pros. Atty., Cape Girardeau, for plaintiff-respondent.

STEWART, Presiding Judge.

Defendant appeals from judgment entered upon conviction by a jury of the crimes of burglary in the second degree and of stealing.

We affirm.

In general terms the contentions of defendant are that the trial court erred in (1) failing to sustain his motion for judgment of acquittal, (2) denying his motion to suppress, (3) admitting evidence with respect to tread patterns on his shoes, (4) failing to suppress evidence of a statement made by defendant and his codefendant, (5) admitting irrelevant testimony of a police officer, and (6) admitting conclusory testimony of a police officer.

Once again we are met with a flagrant violation of the rules concerning appellate procedure. Defendant's statement of facts does not contain any page references to the transcript to support the statement. Rule 84.04(h). Counsel would do well to read *Thummel v. King,* 570 S.W.2d 679 (Mo.banc 1978), before undertaking to write a brief.

Rather than prolong the proceedings as warranted by Rule 84.08, we have undertaken the task of drafting the statement of facts at the expense of other litigants whose cases await our consideration.

On February 3, 1981, an extremely cold night, at 4:54 a.m., Cape Girardeau police responded to an alarm sounding at an army surplus and general merchandise store known as the Fox Hole. When the police arrived two minutes later they found the three foot by five foot plexi-glass portion of the front door lying inside the store. The frame of the door was locked. A full patent shoe print was found on the exterior side of the plexi-glass. The print was about half way up on the plexi-glass. The police searched the premises but found no one.

While at the Fox Hole, one of the officers was dispatched to the courthouse because an alarm was sounding there. The courthouse is just a short distance south and west of the Fox Hole. The officer found the courthouse to be secure and started back to the Fox Hole searching the area from his patrol car. At a point approximately two blocks from the Fox Hole, the officer saw defendant and Johnny Walker walking south, away from the area of the Fox Hole. They seemed startled and de-

fendant made a motion as though he was getting rid of something. Defendant and Walker continued walking but stopped at the officer's command about 150 feet from where he had first seen them. They were asked for their identity and as to their purpose for being on the street. They gave their identity and told the officer that they were out jogging. The officer noted that they were not breathing heavily, and that Walker was wearing slick soled shoes. Defendant was wearing tennis shoes. The temperature was about 5 degrees. When other officers arrived, the first officer went to the area where he had first observed the two men. Upon searching the area he found a hand scale. Mr. Mabrey, the person who had secured the Fox Hole at closing time was brought to view the scale. He identified it as his. Mr. Mabrey testified that a similar set of scales was missing from the Fox Hole. Also missing were seven long guns and three handguns. The long guns were recovered in a vacant lot a short distance from the Fox Hole. The handguns were never recovered.

After Mr. Mabrey identified the hand scale, defendant and Walker were placed under arrest and taken to headquarters where they were booked and their clothing was taken as evidence.

The experts who compared the shoe sole impression on the plexi-glass with the sole of the defendant's right shoe testified that the impression on the plexi-glass had been made by defendant's shoe sole.

The first two points raised by defendant attack the sufficiency of the evidence to warrant submission of the case to the jury. We review the evidence in the light most favorable to the State. *State v. Williams,* 623 S.W.2d 552, 553 (Mo.1981).

■ Defendant first contends that there was no evidence of ownership or occupancy of the burglarized premises. Proof of ownership or occupancy of the premises is essential to a conviction for burglary in the second degree, to show that the premises did not belong to the accused and to protect the accused from a second prosecution for the same offense. *State v. Wilhite,* 587

S.W.2d 321, 323 (Mo.App.1979); *State v. Smith,* 626 S.W.2d 669, 671 (Mo.App.1981).

In this case Mr. Mabrey was not specifically asked about the ownership of the Fox Hole. He was asked his occupation and replied "Salesman." *This reply does not negate his ownership of the establishment as defined in* Wilhite, supra.

The following evidence viewed favorably to the State leads to the conclusion that Mr. Mabrey was the owner of the Fox Hole. On the night of the crime when he was asked if he could identify the scale that was taken from the store he said "[t]hey're mine." When shown photographs of the door, he testified "[w]ell, this is my front door." He also identified the long guns that had been recovered as "my guns." He further testified that he usually closed the store around five o'clock; that on February 2 the store was closed at five after five o'clock p.m. He locked up and checked to be certain that the store was secure. He has a security system that is tied into the police department. In the very early morning of February 3 he was notified that the alarm had been activated and he returned to the store. He testified that he had not given defendant or Walker permission to enter the store after closing.

■ There was sufficient evidence to permit a jury to find that Mr. Mabrey occupied and used the premises to the exclusion of defendant and Walker and to protect defendant from being prosecuted a second time for unlawfully breaking into the premises known as the Fox Hole.

Defendant also contends that the circumstantial evidence was not inconsistent and irreconcilable with his innocence and did not point to his guilt so clearly as to exclude every reasonable hypothesis of innocence. *State v. White,* 439 S.W.2d 752, 754 (Mo. 1969).

The application of the "circumstantial evidence rule" is realistically tempered, however, such that the circumstances need not be absolutely conclusive of guilt or demonstrate impossibility of innocence. "[T]he mere existence of other hypotheses is not

enough to remove the case from the jury." *State v. Newman,* 605 S.W.2d 781, 786 (Mo. 1980).

We believe it abundantly clear from the facts set out above in the statement of facts that the jury could have found the following: Defendant in the company of Walker kicked the plexi-glass into the store; his foot print was found halfway up the exterior of the plexi-glass, a most unlikely place to find a foot print under ordinary circumstances. The only logical inference is that the foot that wore the shoe was used to push the door glass in the store. Defendant, even in argument, gives no other plausable explanation of the presence of the foot print. *See State v. Hulbert,* 621 S.W.2d 310 (Mo.App.1981). Further, long guns that were taken from the store were found within 75 yards of the store, a scale that was taken from the store was found in the near presence of the defendant and Walker who were on the street at an unlikely hour on an extremely cold morning with an implausable reason for being there.

■ There was sufficient evidence to warrant submission of the case to the jury. *State v. Hulbert, supra; State v. Newman, supra.*

Defendant's next two points may be reviewed as one. He contends that the court erred in failing to suppress all evidence of the tread pattern of defendant's right shoe including photographs and scientific analysis and comparison with the imprint in the plexi-glass door because his shoes were seized as a result of an unlawful search incident to an unlawful arrest in that the arrest was without probable cause.

The basic evidence sought to be suppressed is the tennis shoe that was seized along with the other clothing after defendant had been arrested and taken to the jail.

Defendant argues that the tennis shoe in question was taken from defendant after he had been unlawfully arrested. Defendant is correct in his assertion that a search of his person is justified only if it is incident to a lawful arrest. *State v. Goodman,* 449 S.W.2d 656, 659 (Mo.1970). Defendant then

argues that he was arrested when the police officer ordered him to come over to the car and at that time the officer did not have probable cause to arrest defendant.

■ In the instant case the police officer did not immediately arrest defendant. When police officers entertain a reasonable suspicion that criminal activity may be afoot, they may stop a person upon suspicion, require the suspect to identify himself and make reasonable inquiries concerning his activities. "Reasonable suspicion" need not rise to the level of probable cause to arrest. *State v. Lasley,* 583 S.W.2d 511, 518 (Mo.1979).

■ In this case the police officer knew that a crime had been committed; that at least one person who had committed the crime had left the print of a tennis shoe upon the door. Defendant and his companion were seen walking away from the vicinity of the burglarized store a short time after the alarm had sounded at an unlikely hour for persons to be about. The officer saw defendant make a suspicious gesture. There was sufficient reason to warrant an investigatory stop of defendant and his companion and to make reasonable inquiries concerning their activities. *State v. Lasley,* 583 S.W.2d at 518. The two men gave suspicious if not implausable reasons for their presence. The officer noted that defendant was wearing tennis shoes. Upon further investigation a scale that had been taken from the Fox Hole was found at the point where the police officer had first seen defendant and his companion. There was then reasonable cause to arrest defendant. Defendant was arrested and the tennis shoe was taken from him at the jail. It followed that the evidence was obtained incident to a lawful arrest.

Defendant next complains of the admission into evidence of the statements made by defendant and his companion to the effect that they were out jogging between 4:00 a.m. and 5:00 a.m. Defendant contends that the statements were made as a result of a custodial interrogation before the officers gave defendant the *Miranda* warning and that defendant was in custody as the result of an unlawful arrest.

What we have said with respect to defendant's last point is also controlling with respect to this issue. Under the circumstances detailed above, the police officer had a right to stop defendant and make inquiry as to defendant's activities. This he did. We find no merit in defendant's contention on this issue. *State v. Lasley,* 583 S.W.2d at 518; *State v. Battle,* 588 S.W.2d 65, 68 (Mo.App.1979).

Defendant next contends that the court erred in admitting the testimony of Officer Higgerson that he left the scene of the burglary to respond to an alarm at the courthouse and after an investigation found the courthouse secure and no one there. Defendant contends that the evidence was irrelevant.

The trial court has broad discretion with respect to the admission of evidence and the determination of its relevancy. *State v. Heinz,* 607 S.W.2d 873, 877 (Mo.App.1980). A law suit cannot be tried in a vacuum. The facts elicited from the police officer here were necessary to a coherent presentation of the State's case. We find no abuse of discretion on the part of the trial court. Nor does defendant show how he might have been prejudiced by this evidence.

For his final point, defendant urges us to reverse because the court failed to strike the testimony of the police officer that he went back to search the area where he first saw defendant because he and Walker "had thrown their arms around or made me believe that they were getting rid of something." Objection to this testimony was sustained by the court.

We sua sponte note that similar testimony was subsequently admitted into evidence. The issue requires no detailed discussion. The admission of this evidence was not erroneous. *See State v. Morrow,* 541 S.W.2d 738, 742 (Mo.App.1976).

We find no reversible error; the judgment is affirmed.

STEPHAN and CRANDALL, JJ., concur.