STATE of Missouri, Respondent,

v.

Alan Jeffrey BANNISTER, Appellant.

No. 64896.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1984.

Rehearing Denied Dec. 18, 1984.

Ray Gordon, Public Defender, David Robards, Sp. Public Defender, Joplin, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

A jury convicted Alan Jeffrey Bannister of capital murder, section 565.001, RSMo 1978, and recommended he be punished by death, section 565.008, RSMo 1978 (repealed 1983). Judgment was rendered accordingly. Appellant charges: the trial court lacked jurisdiction because officers illegally arrested defendant; the statutes that authorize capital punishment permit one to avoid the death penalty by pleading guilty and so "chill" defendant's constitutional right to a trial by jury; the selection of the jury panel was improper; the court erred in certain rulings on voir dire; the court erred in admitting certain evidence and in omitting certain required instructions to the jury during the trial. In addition to review of these contentions, the Court will review the death sentence as mandated by law. See sections 565.014, RSMo 1978, and 565.035, Cum.Supp.1983. Affirmed.

■ The evidence is sufficient to support defendant's conviction for the hired killing of Darrell Ruestman.

In August 1982, defendant lived near Peoria, Illinois, with Ronald Rick Wooten, also known as "Indian." Indian asked defendant if he would like to make some money by killing a man. When defendant expressed interest, Indian explained that a man whose wife left him for another man wanted to have the latter killed. According to the plan, defendant would receive $4,000 to commit the murder, $1,500 in advance and the remainder upon proof of the death with a newspaper report. Indian would furnish a gun and transportation. Indian subsequently gave defendant a slip of paper, upon which was written "Darrell Ruestman, Shady Lane Mobile Home Park, Joplin, Missouri." The plan thus completed, defendant left by bus for Joplin.

On August 20, 1982, Darrell Ruestman was living in a Joplin trailer park with Linda McCormick, then married to Richard McCormick. That afternoon, defendant arrived in town, registered under a different name at a motel where he paid in advance for two days, and then visited the trailer park. He returned to the park on the following day, when he befriended a resident, Glenn Miller. When Ruestman and McCormick arrived at home that evening, McCormick observed defendant and Miller sitting in front of the Miller trailer, next to that occupied by Ruestman and McCormick. Later in the evening, McCormick again observed the two men in the vicinity of the trailer she shared with Ruestman. McCormick retired, and awoke at approximately 10:00 p.m. to the sound of knocking at the trailer door. When Ruestman answered the door, he was shot, and died before the police arrived.

At approximately 3:30 a.m. the next morning, defendant took a taxicab to the bus station, where he was arrested by Joplin and Newton County police officers for the murder of Darrell Ruestman. Defendant was placed in a lineup and was positively identified by McCormick and two other witnesses as the man seen near the Ruestman trailer shortly before the murder. In subsequent statements to the police, defendant revealed various details of the crime, and led officers to certain physical evidence, including the murder weapon and the torn-up note with the victim's name on it. Additional facts appear in the context of the issues to which they pertain.

## I.

■ Appellant argues, *pro se,* that the lower court was without jurisdiction to try his case because his arrest was illegal. This assertion, if true, did not divest the trial court of jurisdiction to try the case. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *State v. Olinghouse,* 605 S.W.2d 58 (Mo. banc 1980); *State v. Moore,* 580 S.W.2d 747 (Mo. banc 1979). Appellant's citations do not hold otherwise.

## II.

■ Appellant questions the constitutionality of sections 565.006 and 565.008, RSMo 1978, which govern the imposition of capital punishment in this state. Based on references to the "trial" and "trials" in these provisions, appellant construes the statutes as precluding the penalty of death when an accused tenders a guilty plea. If this construction were correct, the constitutionality of the statutes would, as defendant argues, be in doubt. *See United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). The statutory language, legislative history and case law, however, do not support such construction.

The legislation on its face does not expressly distinguish for purposes of punishment between defendants who plead guilty and those who seek jury trials. This Court has observed that "the Missouri capital murder statutes draw no such invidious distinction," *State ex rel. Westfall v. Mason,* 594 S.W.2d 908, 915 (Mo. banc 1980), *rev'd on other grounds,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); and this Court does not read a possibly impermissible classification into the statutes where none appears intended.

## III.

Appellant argues the trial court erred in refusing to quash the jury panel because its selection did not comport with the applicable statutes. Appellant concedes that the creation of the jury pool and the selection of the panel was proper. He complains of a denial of his right to a fair and impartial jury based on the dismissal from service of prospective jurors by a single member of the Board of Jury Commissioners, acting alone, rather than by the entire Board.

■ The "single member of the Board" was the trial judge, who for reasons undisclosed excused eleven potential jurors prior to trial. Appellant does not claim that the judge excused these jurors for insufficient or improper reasons. The only attempt to show that the action of the trial court prejudiced defendant is his contention that the practice creates the possibility of error on the part of the trial judge which may lead to removal of a qualified juror. The trial court possesses the discretion to evaluate the qualifications of prospective jurors and to excuse ineligible individuals from the panel. *State v. Gilmore,* 661 S.W.2d 519, 523 (Mo. banc 1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). Appellant's general allegation, without more, does not establish that the court abused its discretion in this instance. Substantial compliance with the statute is sufficient, and a defendant cannot prevail where, as here, he is unable to point to any prejudice caused by a failure to accord strict compliance with the statutory procedure.

## IV.

█ Appellant charges a number of errors to conduct of the voir dire examination. The applicable standard of review recognizes that the trial court is possessed also of the discretion to control voir dire examinations, and its rulings will be upheld on appeal absent abuse of that discretion. *State v. Smith,* 649 S.W.2d 417 (Mo. banc 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). In the first of these charges, appellant argues that the trial court unduly restricted questioning by defense counsel on the subject of capital punishment. The State responds that the questions posed were irrelevant in determining the qualifications of the jurors and, in any event, that defendant suffered no prejudice as a result of the court's rulings.

█ Only an abuse of discretion combined with likely injury to the complaining party warrants setting aside a challenged ruling. *Smith, supra,* at 422. Appellant objects to the limitation on defense counsel's use of open-ended questions. This limitation was reasonable, a proper exercise of the court's discretion in controlling the proceeding, and left the defense free to rephrase its questions. Appellant also argues that the court hampered efforts to rehabilitate jurors who expressed opposition to the death penalty by restricting the use of hypothetical examples. From the record it appears that the judge did not prohibit all references to situations other than the case on trial, and stated only the likely intention to disallow further questioning if it became repetitious. The panel members were questioned on their ability to consider the full range of punishment, including the death penalty. There is no evidence of either an abuse of discretion or of injury to the defendant resulting from the court's rulings.

Appellant argues that the trial court erred in refusing to strike for cause venireman Morris who stated, "It might sway my opinion on how I would vote if you were to find [defendant] guilty, and you didn't put him to death. What I'm saying is I don't want him put in a jail cell at my expense."

The statement was volunteered following comments of the prosecutor to the panel on the availability of the death penalty in a capital murder case. It was not made in response to any question on voir dire; neither party probed Morris for meaning or exploitation of the unsolicited remark. The defense exercised a peremptory challenge to remove Morris from the panel.

█ The standard set forth above and the failure of the defendant to preserve this issue in his Motion for New Trial confine this Court's review of his claim. Rule 30.20. Mr. Morris was not among the jurors who responded in the negative when asked if they could follow all of the instructions of the court and accord defendant a fair and impartial trial. Generally, language such as "might sway" reveals a predilection on the part of a venireperson insufficient to justify removal. *See State v. Olinghouse,* 605 S.W.2d 58 (Mo. banc 1980). When the response of a potential juror suggests a question of his qualifications to serve, defendant shares responsibility for probing the juror's qualifications through further inquiry. *State v. Ofield,* 651 S.W.2d 190 (Mo.App.1983); *State v. Cheesebrew,* 575 S.W.2d 218 (Mo.App.1978). This Court defers to the superior position of the trial court in ruling on challenges for cause and concludes that under the circumstances, including the failure to further examine Morris, the refusal to strike him for cause did not result in manifest injustice or a miscarriage of justice to call for relief under Rule 30.20.

Appellant charges the trial court erred in excusing venirepersons Dana Shaver and Robert Melton, and asserts that section 494.031, RSMo 1978, which exempts certain professionals from jury service upon request is unconstitutional. Neither Shaver nor Melton claimed or sought exemption under the statute; and without demonstration to the contrary, when it is equally likely that a valid alternative ground prompted dismissal, it is not necessary to address the constitutional claim.

■ When the court inquired of the panel whether extended jury service created personal hardship, venirewoman Shaver responded that she had just begun teaching learning disabled children who, having recently changed teachers, would have difficulty with her prolonged absence. From this it appears that the judge excused Shaver on the ground of hardship, and her dismissal was within the discretion accorded the trial court. *State v. Upshaw*, 619 S.W.2d 925, 927–928 (Mo.App.1981).

■ There is also no abuse of discretion in the decision of the court to excuse venireman Melton, a clergyman. In response to questions by the prosecutor, Melton twice indicated that he could never impose the death penalty under any circumstances. Although Melton equivocated somewhat when defense counsel questioned him further, on voir dire by the court he responded "I feel it would ruin my entire ministry if I would say yes. I can just pronounce what God has said, thou shalt not judge...." When pressed by defense counsel for the reason for the dismissal of juror Melton, the court stated, "I'm excusing him for cause, but that includes also the fact he's an ordained minister." The record thus shows that juror Melton was not exempted from service upon request under section 494.031, RSMo 1978, because he was a minister; but that he was properly excused for cause, his inability as a minister or otherwise to consider imposition of the death penalty under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *See State v. Battle*, 661 S.W.2d 487 (Mo. banc 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984).

Appellant, *pro se,* challenges the "death qualification" of the panel as unconstitutional. The Court has previously considered and rejected this claim. *See, e.g., State v. Guinan*, 665 S.W.2d 325 (Mo. banc 1984).

### V.

Appellant challenges certain evidentiary rulings of the trial court. The brief of counsel and the *pro se* brief allege that the court in three instances erroneously admitted evidence of other crimes.

Appellant argues that the court erred in admitting evidence of prior convictions during the penalty phase of the trial. He did not object when the State introduced the evidence and failed to raise the issue in his Motion for New Trial. Review for plain error discloses no manifest injustice. Rule 30.20. Appellant analogizes to the situation where the court limits the evidence admissible when a defendant with prior convictions testifies in his own defense. Unlike the situation appellant describes, here the court admitted the evidence in the penalty phase, during which the court has the discretion to admit evidence to assist the jury in determining punishment. *Gregg v. Georgia*, 428 U.S. 153, 203–204, 96 S.Ct. 2909, 2939–2940, 49 L.Ed.2d 859 (1976); *State v. McDonald*, 661 S.W.2d 497 (Mo. banc 1983).

The plain error rule also limits review of the claim that evidence of an accident in which Glenn Miller, the trailer court resident whom defendant befriended, died. The evidence showed that Miller visited the defendant in his motel room after the murder. Miller was drunk, and defendant offered to escort him back to the trailer court. When the two men stopped to rest on a viaduct over some railroad tracks, Miller straddled the bridge railing, lost his balance and fell to the tracks below. Defendant, believing Miller to be dead, started back toward his motel. On his return defendant encountered two deputy sheriffs who had previously seen the two men approach the viaduct and who were looking for Miller and another unidentified subject in connection with the Ruestman murder. In response to their questions, defendant said his companion had gone to the Ramada, that he was returning to his motel, and that he did not know of any trailer parks in the area. The deputies left and defendant returned to his motel.

■ The general rule is that evidence of other crimes is inadmissible. *State v. Shaw*, 636 S.W.2d 667 (Mo. banc

1982), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). Exceptions to the rule permit the introduction of evidence admitted for some purpose other than to show a greater likelihood that defendant, by virtue of his criminal nature as evidenced by proof of other crimes, committed the crime charged. If the evidence comes within a recognized exception, it is admissible. The determination whether relevance of the evidence outweighs any prejudice to the defendant lies within the discretion of the trial court. *Shaw,* 636 S.W.2d at 671–672.

 If the challenged evidence qualifies as evidence of other crimes, it was admissible to complete the account of the murder presented by the State, *State v. Rayford,* 646 S.W.2d 137 (Mo.App.1983), and to corroborate the confession of defendant. *State v. Mercer,* 618 S.W.2d 1 (Mo. banc 1981), *cert. denied,* 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981). The trial judge could reasonably find the evidence relevant for these purposes. "Nor is this otherwise relevant evidence ... rendered inadmissible because it might also tend to constitute proof of another crime or discredit defendant's character." *Mercer, supra,* at 9. The Court has applied the foregoing analysis to the argument that the statement defendant volunteered to police regarding his participation in bank robberies was inadmissible, and similarly finds no plain error in the admission of this evidence.

Appellant maintains the trial court erred in admitting certain statements allegedly obtained in violation of his right to counsel. The State counters that the evidence was admissible because defendant voluntarily gave his statements to the police after he received full *Miranda* warnings.

Arresting officers twice advised defendant of his *Miranda* rights and made no attempt to question him. At 5:40 a.m. on August 22, at the Joplin City Jail, defendant again received *Miranda* warnings. At that time, he refused to sign a waiver form, indicating his desire to wait for an attorney. The questioning ceased. Later, defendant volunteered certain information to officers, including the alias he used at the motel. En route to the Newton County Jail, defendant inquired as to the possible punishment for capital murder, expressed regret that he left his "own profession" of "robbing banks" at which he "never got caught," and speculated about FBI involvement in the current investigation. At 6:30 a.m., following his arrival at the jail, defendant asked to see the person in charge. Officers took defendant to the sheriff, who declined to talk with defendant, but invited him to make a telephone call and advised him to tell the truth. Defendant initiated each of these contacts without prompting by police officers.

At 10:30 a.m. on August 23, defendant met with the sheriff and two officers, at which time they advised him of his *Miranda* rights. Defendant stated that he understood his rights and wanted to talk, and signed a written waiver. During the conversations that followed, defendant recounted numerous details of the crime. At defendant's suggestion, he accompanied officers to the scene of the murder, where he continued his commentary on the events prior to and immediately following the shooting. During this time, officers reminded defendant that he did not have to cooperate, but he responded that he wanted to talk. Upon their return to the sheriff's office, officers permitted defendant telephone calls and again read him his *Miranda* rights. Defendant then gave officers an account of the crime from its inception to defendant's arrest. Although defendant initially used the third person in describing the events and never specifically stated that he shot Ruestman, the extent and detail of the information he provided leaves little doubt of his guilt. Other than mention of occasional pain from a past injury, defendant did not appear to be in pain during questioning, did not request immediate medical care or move to halt the interview, and there is no evidence of physical or psychological coercion.

 A request for counsel bars further interrogation until an attorney is

present, unless the accused in the interim voluntarily initiates discussion. *Edwards v. Arizona,* 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378 (1981). When defendant requested an attorney, officers stopped the interrogation. The second interview with police followed more than a day later, during which time defendant expressed a desire to talk, and began only after officers repeated the *Miranda* warnings and received an indication that defendant understood his rights and wished to talk. Defendant's repeated expressions of willingness to talk in the absence of counsel, his volunteered statements to officers about the shooting, his response that he understood his rights, as well as his action in signing the waiver form, show a valid waiver. This establishes that the law enforcement officers respected defendant's right to have counsel present during interrogation; he himself initiated further discussions, then knowingly and intelligently relinquished his rights and voluntarily gave a statement. *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *State v. Boggs,* 634 S.W.2d 447 (Mo. banc 1982).

■ Appellant alleges, *pro se,* that keys taken during an illegal search of his motel room were inadmissible. He does not direct the Court to any evidence that police found the keys in his motel room, and a review of the record reveals none. The unverified allegation that officers illegally seized the keys does not warrant consideration as a ground for reversal. *State v. Williams,* 652 S.W.2d 102, 111 (Mo. banc 1983).

### VI.

The remaining charges are that the trial court failed to instruct and misinstructed the jury in various respects. The argument that the failure to instruct the venire panel in accordance with MAI–CR 2d 1.08(b) prior to court recesses amounts to reversible error was resolved previously against defendant in *Shaw,* 636 S.W.2d at 671.

■ Appellant next alleges the court erred in failing to instruct the jury on the use of evidence of other crimes. Contrary to this contention, the judge must give the relevant instruction, MAI–CR 2d 3.60, only if requested, and it does not appear that defendant requested a limiting instruction. This issue has not been properly preserved for review, and review under the plain error rule results in a determination of no manifest injustice.

■ Appellant complains of the absence of an instruction on circumstantial evidence. The general rule requires the trial judge to submit only those instructions supported by the evidence. *State v. Williams,* 652 S.W.2d 102 (Mo. banc 1983). In particular, the judge must instruct on circumstantial evidence if the evidence in the case is wholly circumstantial, *State v. Lasley,* 583 S.W.2d 511 (Mo. banc 1979); the judge need not submit the instruction where both direct and circumstantial evidence exist. *State v. Griffin,* 662 S.W.2d 854 (Mo. banc 1983). Admissions constitute direct evidence and eliminate the need for a circumstantial evidence instruction. *State v. Stevens,* 467 S.W.2d 10 (Mo.1971), *cert. denied,* 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971); *State v. Sherrill,* 657 S.W.2d 731 (Mo.App.1983). A statement need not be an express acknowledgment of guilt to qualify as an admission. Whether a statement fits the definition depends upon all the circumstances. *State v. Spica,* 389 S.W.2d 35 (Mo.1965), *cert. denied,* 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966).

■ Appellant emphasizes the lack of an eye witness and that he never explicitly confessed to the shooting. Yet the record, replete with defendant's inculpatory statements, does not support his argument that his statements merely "raise an inference of guilt" and are not direct evidence. When the sheriff asked defendant how, given the small size of the weapon, he knew that he killed Ruestman, he replied, "[I]f you shot him in the right place they are dead." He also told officers of the plan to commit the murder, how he found

the victim, his flight after the shooting, and the location of various items of evidence. Defendant's statements constitute admissions that provide direct evidence of his guilt.

■ Appellant asserts that the trial court erroneously omitted a portion of MAI-CR 2d 15.42, the instruction on aggravating circumstances. The Notes on Use authorize the submission, in addition to statutory aggravating circumstances, of additional aggravating circumstances "otherwise authorized by law." Appellant complains of the omission of a reference to his prior convictions and guilty pleas, an aggravating circumstance "otherwise authorized by law," as follows, "You may also consider the defendant's prior convictions and pleas of guilty to offenses other than those of a serious assaultive nature." The omission, defendant concludes, implied that all of his prior offenses were "of a serious assaultive nature."

It is difficult to imagine how defendant could suffer prejudice from the omission of a reference that underscores his criminal history. In any event, the applicable aggravating circumstance "otherwise authorized by law" places all prior convictions before the jury. The instruction submitted directed the jury to consider all of the evidence if it found, as it did, one or more statutory aggravating circumstances. MAI–CR 2d 15.42. *State v. LaRette*, 648 S.W.2d 96 (Mo. banc 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). It was for the jury to determine the nature of the prior convictions in evidence and it reasonably could find, as appellant concedes, that several were for offenses of a "serious assaultive" nature.

■ Although not preserved for review, the Court finds no error in the alleged refusal to submit the statutory mitigating circumstance whether defendant acted under the substantial domination of another. In urging the Court to find plain error in the failure to submit the above mitigating circumstance, appellant cites evidence showing that "Indian" was a mean person whom defendant feared. Other evidence showed that defendant expressed interest when offered the opportunity to make money by "hitting" a man, and that defendant alone killed his victim while Indian remained miles away in Illinois. The evidence cited is insufficient to support the circumstance now urged.

■ Mandatory review of the sentence, section 565.014.3, RSMo 1978; *State v. Mercer*, 618 S.W.2d 1, 5 (Mo. banc 1981), reveals a record devoid of evidence that the sentence "was imposed under the influence of passion, prejudice or any other arbitrary factor." *State v. Stokes*, 638 S.W.2d 715, 724 (Mo. banc 1982), *cert. denied,* 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983).

The jury found two statutory aggravating circumstances. The proof of prior convictions for armed robbery (two counts), burglary (two counts), rape, and deviate sexual assault provide a basis for a submission and the finding of the jury that defendant had a substantial history of serious assaultive criminal convictions. § 565.012.-2(1), RSMo 1978. The evidence supports the second aggravating circumstance, submitted and found, that the murder was committed for the purpose of receiving money or any other thing of monetary value. § 565.012.2(4), RSMo 1978.

Defendant's sentence to death for the murder of Darrell Ruestman is not excessive or disproportionate to the penalty imposed in similar cases considering the crime, the defendant, and the strength of the evidence. The following cases, among others, comport with affirmance of the death penalty in this case. *Gilmore*, 661 S.W.2d at 525; *McDonald*, 661 S.W.2d at 506–507; *Stokes*, 638 S.W.2d at 724; *State v. Blair*, 638 S.W.2d 739 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983).

The judgment is affirmed.

RENDLEN, C.J., and WELLIVER, GUNN, BILLINGS and DONNELLY, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

BLACKMAR, Judge, concurring.

After some hesitation, I concur.

I believe that the trial judge should have excused juror Morris. His coarse and insensitive remark about putting the defendant "in a jail cell at my expense" gives no reasonable expectation of sober and reflective views about the punishment. Yet defense counsel did not pursue the point on voir dire and did not preserve it in a motion for new trial.

I am also persuaded that juror Melton could properly be excused under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *Witherspoon* provides a rare exception to the salutary proposition that error may not be predicated on the sustension of a challenge for cause, in holding that a juror may not be so excused because of a mere predilection against the death penalty. Even one excuse in violation of the *Witherspoon* standard requires reversal of the death sentence, *Burns v. Estelle*, 592 F.2d 1297 (5th Cir.1979) and, surely, the Court may not correct an erroneous excuse simply because the juror himself could have asserted a statutory exemption from service.

We have a special responsibility in death sentence cases under § 565.014.3, RSMo 1978. The rules of preservation of error should be relaxed, especially as to the requirement of renewing claims of error in a motion for trial under Rule 27.20. This case, however, is a particularly aggravated one in which a hired killer traveled from Illinois and coldly stalked his prey. I seriously doubt that the result would have been different if the state had been obliged to use a peremptory challenge against Melton or if the defendant had been afforded an additional peremptory.