**Alan Jeffrey BANNISTER,
Movant-Appellant,**

v.

**STATE of Missouri,
Respondent-Respondent.**

**No. 14640.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 3, 1987.

Motion for Rehearing or Transfer
Denied March 19, 1987.

Application to Transfer Denied
April 14, 1987.

Robert Wolfrum, Asst. Public Defender, St. Charles, for movant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent-respondent.

HOGAN, Judge.

Defendant Alan Jeffrey Bannister was hired to assassinate one Darrell Ruestman. On August 21, 1982, he did so. Subsequently a jury convicted Bannister (hereinafter defendant) of capital murder as defined and denounced by § 565.001, RSMo

1978 (now repealed). The jury recommended that defendant be punished by death. Section 565.008, RSMo 1978 (repealed 1983). Judgment was rendered accordingly. On appeal, our Supreme Court affirmed the judgment and sentence. *State v. Bannister*, 680 S.W.2d 141 (Mo. banc 1984), cert. denied, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). The defendant thereafter sought post-conviction relief under our Rule 27.26. The trial court denied relief and the defendant now appeals. Notwithstanding the fact that a death sentence was imposed, we have jurisdiction of the cause. *Mercer v. State*, 666 S.W.2d 942, 944[1–3] (Mo.App.1984).

 The defendant has briefed and argued six assignments of error in this court. The general tenor of his brief is that he did not have the effective assistance of counsel. So, with one exception—which shall be noted—our primary inquiry is whether inspection of the entire record demonstrates: 1) that trial counsel failed to exercise that degree of skill, care and diligence to be expected of a reasonably competent attorney under similar circumstances, and 2) that defendant was prejudiced by trial counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2064–65[5][6], 80 L.Ed.2d 674 (1984), rehearing denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979); *Simons v. State*, 719 S.W.2d 479, 480 (Mo. App.1986). To establish the required prejudice, the record must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. at 697, 104 S.Ct. at 2067–68. With these principles in mind, we consider the defendant's assignments of error as we understand them.

## I

### A

Defendant's first point is directed to an incident which occurred during the trial following comment by the prosecutor to the jury panel concerning the availability of the death penalty. Venireman R.E. Morris volunteered the following remarks:

"VENIREMAN MORRIS: Could I stop and ask a question there? [The fact that the death penalty might be imposed] might sway my opinion on how I would vote if you were to find him guilty, and you didn't put him to death. What I'm saying is I don't want him put in a jail cell at my expense."

Our Supreme Court noted that Morris' statement was volunteered; it was not made in response to any questions propounded on voir dire, and neither party called upon Morris to explain his unsolicited remark. The court further noted that the defense exercised a peremptory challenge to remove Morris from the panel, and also observed that review of the trial court's failure to sustain defendant's challenge for cause was limited by counsel's failure to preserve the issue in his motion for new trial. The court found no such manifest injustice or miscarriage of justice requiring reversal under Rule 30.20. *State v. Bannister*, 680 S.W.2d at 145. In a thoughtful concurring opinion, Judge Blackmar expressed the view that venireman Morris' unsolicited remarks gave "no reasonable expectation of sober and reflective views about the punishment" to be imposed.

Seizing upon Morris' outburst, counsel has framed a point so verbose and so diffuse as to be difficult to follow. The point is cited marginally.* We conclude that the

---

* "The post conviction court clearly erred when it failed to make findings of fact and conclusions of law regarding movant-appellant's allegation in his 27.26 petition that movant was denied effective assistance of counsel and an impartial jury in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 18(A) of the Missouri Constitution

because movant's counsel failed to object to and preserve in his motion for new trial the issue of whether venireman Morris should have been excluded for cause upon his statement to the court that it might sway his opinion on how he would vote in the punishment phase of the trial if he knew that defendant would be incarcerated at his expense, said failure causing the erro-

first point raises two questions essential and necessary to a resolution of this appeal: 1) Were the trial court's findings of fact and conclusions of law insufficient in form and clearly erroneous in substance? 2) If the whole record is considered, should the trial court have sustained trial counsel's challenge for cause when he objected to Morris' voluntary remark?

### B

The contention that the court's findings of fact and conclusions of law were insufficient in form and clearly erroneous in content need not detain us long. Rule 27.26(i) requires the trial court to make findings of fact and conclusions of law on all issues presented in a post-conviction proceeding, but that requirement is satisfied if the findings and conclusions sufficiently cover all points raised by the petitioner so as to permit meaningful appellate review. *Laws v. State*, 708 S.W.2d 182, 185 (Mo.App.1986). The findings of fact and conclusions of law made in connection with the trial court's refusal to strike Morris for cause are amply sufficient to permit this court to understand the trial judge's reasoning. Further, it is to be borne in mind that in proceedings under Rule 27.26, even if the trial court's basis for denying relief is incorrect, we must affirm the judgment if it is sustainable on other grounds. *State v. Kimes*, 415 S.W.2d 814, 815 (Mo.1967); *Mercer v. State*, 666 S.W.2d at 947[9–11]; *Jones v. State*, 604 S.W.2d 607, 609 (Mo.App.1980). In light of these rules, defendant's argument concerning the findings of fact and conclusions of law is without merit.

### C

As just noted, the substance of defendant's first point, stripped of its rhetorical froth, is that counsel was ineffective at the trial because he did not pursue his challenge for cause and because he did not assign the refusal of his challenge for cause in the motion for new trial. This assignment requires examination of the whole record to determine whether, in light of that record, Morris was constitutionally disqualified as a venireman in a capital case.

As the trial record shows, counsel did move to strike Morris from the panel. When the court inquired if there were challenges for cause, trial counsel responded:

> "MR. GORDON: Mr. R.E. Morris, your Honor, he indicated that a dislike, I think, for people being put in jail at the taxpayer's expense, and I think that would make him biased and in favor of the death penalty without respect to whether or not there are any other extenuating circumstances.
>
> THE COURT: That will be refused."

The assertion that trial counsel was ineffective for failing to pursue the trial court's ruling presupposes there was error in refusing the challenge for cause. The question is analogous to that posed in *Mangan v. State*, 665 S.W.2d 85, 86[2–4] (Mo. App.1984) (trial counsel not ineffective for failure to request an instruction which the court was not required to give) and *Preston v. State*, 627 S.W.2d 892, 894 (Mo.App. 1982) (failure to make an invalid objection does not constitute ineffective assistance of counsel). If there was no trial error, counsel cannot have been ineffective for failure to pursue it. We are well aware that we cannot second-guess our Supreme Court, but we are not called upon to do so. That court obviously did not examine the effect of the alleged error except in the context of plain error.[1]

neous refusal to strike to be examined only for plain error on appeal. This failure to make a finding is clearly erroneous because Rule 27.26(i) requires that 'the court shall make findings of fact and conclusions of law on all issues presented.' The implied ruling that the above-cited constitutional rights were not violated is also clearly erroneous because movant was entitled under the Sixth and Fourteenth Amendment to effective assistance of counsel and a fair and impartial jury, both of which were denied him by the trial court's ruling and his counsel's failure, because the result of the proceeding would have been different had his counsel performed properly, and the refusal to exclude juror Morris was inherently unfair."

1. We note, but do not apply the rule of retroactivity recently announced by the United States

One of the leading cases dealing with the qualifications of veniremen or jurors in a capital case at the time this case was tried is *Witherspoon v. State of Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), rehearing denied, 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186 (1968). In *Witherspoon,* the court held, inter alia, that a potential juror should be excluded if his attitude toward the death penalty would prevent him from making an impartial decision as to defendant's *guilt. Id.* 391 U.S. at 522, n. 21, 88 S.Ct. at 1777, n. 21 (emphasis in original). The holding in *Witherspoon,* however, was clarified by the Eleventh Circuit in *Hance v. Zant,* 696 F.2d 940, 956[39, 40] (1983), cert. denied, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983). There the court held that veniremen who express a preference for the death penalty should not be excluded for cause unless they indicate a bias for capital punishment which is unequivocal and absolute. Despite Morris' undoubtedly coarse and insensitive outburst he was not among the jurors who responded in the negative when the panel was asked as a group if they could follow the instructions of the court and accord the defendant a fair and impartial trial. He positively stated that he believed a man was innocent until proved guilty. Group questioning and nonverbal responses may be considered in determining a venireman's qualification as a potential juror in a death case, *McCorquodale v. Balkcom,* 721 F.2d 1493, 1495–97[1] (11th Cir.1983), cert. denied, 466 U.S. 954, 104 S.Ct. 2161, 80 L.Ed.2d 546 (1984), and a trial court has some discretion in determining a venireman's qualifications. *State v. Olinghouse,* 605 S.W.2d 58, 69 (Mo. banc 1980).

Upon examination of the whole record, we conclude Morris was not disqualified by any unequivocal and absolute bias in favor of capital punishment. There was no error in denying the challenge for cause; therefore counsel was not ineffective in failing to pursue the trial court's denial of that challenge for cause.

## II

In his second point, the defendant asserts he was denied effective assistance of counsel because his trial attorney failed to object to the trial court's answering questions put by the jury during their deliberation at the penalty phase of the trial. The questions and the court's answers were as follows:

"THE COURT: The jury has a question. I've asked that they be brought back in to ask their question. I understand you have a question. I may not be permitted to answer it under the law, but state your question and I will answer it.

THE FOREMAN: Your Honor, there is a point of law that has come up that we would like your opinion on. It's the way it reads, that it would be, the life imprisonment sentence would be for 50 years without any possibilities of parole. Is this true, or does it come up for review every 10 years, or five years, or seven years?

THE COURT: *The law is stated in the instructions,* and that's the way it is. *That's the law.*

THE FOREMAN: There's no way that he would be eligible for parole?

THE COURT: *Under the laws that exist, there is none now.*

THE FOREMAN: And there wouldn't be any chance of review?

THE COURT: *I don't think I, under the law, should or can answer that question.* I think *you'll need to rely on those instructions which do fully state the law.*

THE FOREMAN: All right, thank you, your Honor." (Emphasis added).

In this action, the defendant seizes upon the statement "under the laws that exist, there is none now" and contends that the effect of this remark was to suggest to the jury that "a life sentence might be open to

Supreme Court in *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The concurring opinion of Justice Powell and the dissenting opinion of the Chief Justice make it clear that the *Griffith* case does not apply to collateral attacks upon the judgment of conviction in criminal cases.

review." Counsel suggests that the court's remark led the jury to disregard the instructions which were given. We are cited to *State v. Cornett,* 381 S.W.2d 878, 881[2] (Mo. banc 1964), in which it was held to be prejudicial error for the trial court to inform the jury that the sentence imposed by its verdict might be diminished by parole or some similar proceeding not administered by the judicial branch of government.

*Cornett* undoubtedly states the law, but it is not controlling here. In this case involving ineffective assistance of counsel, defendant has the burden to show prejudice from trial counsel's failure to object, because "The assessment of prejudice [proceeds] on the assumption that the decision-maker (jury) ... reasonably, conscientiously, and impartially [applied] the standards which govern the [case]." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068[20].

We find nothing in this record to refute that assumption. The trial court's statement, in its total effect, is comparable to the trial court's answer to a written question in *State v. Duisen,* 428 S.W.2d 169, 177 (Mo. banc 1967), cert. denied, 390 U.S. 962, 88 S.Ct. 1063, 19 L.Ed.2d 1159 (1968). Taken as a whole, the dialogue merely referred the jury to the court's instructions. The record itself shows those instructions were followed.

At the sentencing hearing Instruction No. 16 (MAI–Cr.2d 15.40) submitted the aggravating circumstances to be considered by the jury in deciding whether to impose the death penalty. The jury was told to consider whether the defendant had a substantial history of serious assaultive convictions, and to consider whether the defendant murdered Darrell Ruestman for the purpose of receiving money or any other thing of monetary value. Both aggravating circumstances were established by evidence. The State had evidence (as State's Exhibit No. 57) that defendant had been convicted of rape in 1979. He had

also been convicted of armed robbery in the same year. In addition, the defendant had been convicted of armed robbery of and deviate sexual assault upon the person of one Jennell Nelson in September 1979. There was also evidence that defendant several times admitted he was a hired killer. Further, Instruction No. 19 (MAI–Cr.2d 15.46) left the decision to impose the death penalty to the jury without qualification.[2]

In their verdict assessing the death penalty, the jury unequivocally stated that the death sentence was imposed because: 1) the defendant had a history of assaultive convictions as shown by State's Exhibit No. 57, and 2) the defendant murdered Darrell Ruestman for the purpose of receiving money. Considering the evidence received at the sentencing hearing, the instruction leaving imposition of the death penalty to the jury and the jury's plain statement of its reasons for assessing the death penalty, we conclude the jury was not misled by and did not consider the trial court's comment. Inasmuch as the remarks of the trial court, taken as a whole, were not prejudicial, counsel was not ineffective because he failed to pursue his objection for cause. *See State v. Neal,* 685 S.W.2d 271, 275 (1985).

### III

Defendant's third point, considerably paraphrased, is that he was denied due process of law because the trial court denied his pro se motion for a psychiatric examination and trial counsel was ineffective because he failed to investigate the defendant's mental condition upon being put on notice that it was an issue at both phases of the trial.

### A

In citing *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and quoting the language of that case extensively, appellate counsel has raised a ques-

---

**2.** Instruction No. 19 read in part: "Even if you decide that a sufficient mitigating circumstance or circumstances do *not* exist which outweight [sic] the aggravating circumstance or circum-

stances found to exist, *you are not compelled to fix death as the punishment. Whether that is to be your final decision rests with you."*

tion we consider only because this is a capital case. If *Ake* deals with ineffective assistance of counsel, it is ineffective assistance based on "state interference" with or denial of the means of making a valid defense.[3] In *Ake*, the United States Supreme Court held that in a proper case, a criminal defendant has a due process right to psychiatric examination and assistance at the trial and at the sentencing hearing in a capital prosecution. If the defendant is indigent, the state must provide psychiatric examination and assistance as a matter of due process.[4] Nevertheless, the scope and effect of the ruling in *Ake* remains problematic because of the exceptional circumstances in which the court made its decision. They were recited thus:

> "... Ake's sole defense was that of insanity. Second, Ake's behavior at arraignment, just four months after the offense, was so bizarre as to prompt the trial judge, *sua sponte*, to have him examined for competency. Third, a state psychiatrist shortly thereafter found Ake to be incompetent to stand trial, and suggested that he be committed. Fourth, when he was found to be competent six weeks later, it was only on the condition that he be sedated with large doses of Thorazine three times a day, during trial. Fifth, the psychiatrists who examined Ake for competency described to the trial court the severity of Ake's mental illness less than six months after the offense in question, and suggested that this mental illness might have begun many years earlier...."

*Ake v. Oklahoma*, 105 S.Ct. at 1098. For the purposes of this opinion, we accept the decisions of the federal circuits interpreting *Ake* to require a criminal defendant at a minimum, to make allegations (in a motion or otherwise) supported by a factual showing that his sanity is in fact at issue in the case, *Volson v. Blackburn*, 794 F.2d 173, 176 (5th Cir.1986), and holding that undeveloped assertions that psychiatric assistance would be beneficial do not meet the burden imposed on the defendant by *Ake*. *Bowden v. Kemp*, 767 F.2d 761, 765 (11th Cir.1985).

**B**

In addition to citing *Ake* and quoting from the opinion, defendant also cites us to our Mental Responsibility Law, which was codified as Chapter 552, RSMo Supp.1983, at the time defendant was tried.

■■■■ Chapter 552, RSMo Supp.1983, provided for two types of pretrial, court-ordered psychiatric examination. Section 552.020.2 required a psychiatric examination if the trial court had reasonable cause to believe that the defendant had a mental disease or defect excluding fitness to proceed. Our trial courts have been quite liberal in ordering a psychiatric examination to determine the fitness of the defendant to proceed, *State v. Strubberg*, 616 S.W.2d 809, 813 (Mo. banc 1981), but they are *required* to enter an order for a fitness hearing only upon the appearance of reasonable cause to believe the defendant has a mental disease or defect excluding fitness to proceed. *State v. Rider*, 664 S.W.2d 617 (Mo.App.1984). The results of this examination may be used to reduce the degree of the accused's criminal responsibility, but not to excuse him entirely. *State v. Strubberg*, 616 S.W.2d at 816.

Section 552.030 provided for a psychiatric examination to assist in determining the availability to the accused of the defense of not guilty by reason of mental disease or defect which would excuse responsibility for the act charged. In *State v. Strubberg*, 616 S.W.2d at 816, our Supreme Court held that if a criminal defendant wanted to expunge himself of all criminal responsibility by reason of mental disease or defect, he was obliged to comply with the *procedural* requirements of § 552.030.2.

---

3. For a discussion of this order of ineffective assistance, see 2 W. LaFave and J. Israel, Criminal Procedure § 11.8, pp. 69–76 (1984).

4. See Comment, An Indigent's Constitutional Right to Expert Psychiatric Assistance: *Ake v.*

*Oklahoma*, 39 Sw.L.J. 957, 968–73 (1985); Comment, *Ake v. Oklahoma:* The Indigent Criminal Defendant's Constitutional Right to Psychiatric Assistance, 10 Okla. City U.L.Rev. 731 (1985).

*Ake,* as we have noted, indicates the States have a due process obligation to provide psychiatric examination to an indigent accused in some circumstances and further indicates the due process right may not be subject to forfeiture by procedural default.[5]

In his Point Three, as in Point One, defendant's appellate counsel has attempted to make his point very inclusive by jumbling up all the rights to psychiatric examination and assistance an accused may have and asserting that all these rights have been infringed. We decline to consider all the tangential points suggested in the "argument" part of defendant's brief under Point Three. The dispositive issue raised by Point Three is whether there was a record basis for asserting the so-called "insanity defense." If not, there was no error.

### C

While the defendant was in custody prior to trial, he was seen and examined by physicians on at least three occasions. There is no indication whatever that he showed any signs of mental disturbance. The only medicine prescribed for the defendant was an analgesic to relieve back pain he suffered from severe stab wounds in the back.

Shortly before trial, the defendant prepared and trial counsel filed a "Motion for Mental Examination." Defendant testified in support of his motion as follows:

"Q. Would you tell the Court why you feel that it is necessary for you to be examined at this time?

A. I've been losing sleep. I'm getting irritable, and I wake up sometimes and just—I just don't feel right.

\* \* \* \* \* \*

Q. Have you ever had any history of mental illness?

A. No.

Q. Any history of it in your family that you know of?

A. No.

Q. Have you ever had a mental evaluation in the last ten years?

A. No."

\* \* \* \* \* \*

At the close of the hearing on this motion, the trial court ruled the motion on its merits, observing that the defendant had written a letter concerning his request for a mental examination. The court commented:

"... Mr. Bannister ... as to today is certainly oriented as far as time is concerned, the day of the week, the month, the year, and the day of the month. ... Certainly there is no indication evidenced to the Court today that he is in anything other than [a] good mental state of health. The motion for examination for psychiatric examination is going to be overruled."

The matter of defendant's mental state was brought up again at the post-conviction hearing. At that time, some reference was made to medical records, including mental evaluations, which could be obtained. Counsel was given time to obtain those records. They were not forthcoming. The post-conviction court finally concluded that the trial court had ample opportunity to observe the defendant on at least two occasions and there was no error in denying defendant's request for psychiatric examination. Having examined the record independently, we reach the conclusion that the defendant's sanity was never in fact at issue during the trial or at the sentencing phase.

 An accused is not entitled to psychiatric evaluation solely as a precaution or safeguard in the absence of evidence that he lacks capacity to proceed to trial. He is not entitled to psychiatric assistance in presenting his defense or in mitigating his punishment in the absence of a showing that his sanity is at issue in the case. There is therefore no merit in the assertion that the trial court denied the defendant due process. The redundant assertion that trial counsel was ineffective because he failed to investigate defendant's

---

5. See Note, *Ake v. Oklahoma: The New "Fundamental Error" Exception to Wainwright v. Sykes,* 1985 B.Y.U.L.Rev. 559, 562–65.

mental condition as a defense and as a mitigating circumstance is likewise without substance. See: *Volson v. Blackburn,* 794 F.2d at 176; *State v. Ingram,* 607 S.W.2d 438, 440–41 (Mo.1980); *State v. Haley,* 603 S.W.2d 512, 517[2] (Mo.1980); *Howard v. State,* 698 S.W.2d 23, 25[5] (Mo.App.1985); *Sweazea v. State,* 588 S.W.2d 244, 246[8] (Mo.App.1979).

## IV

In his fourth point, defendant argues that trial counsel was ineffective because he failed to tender an instruction—"such as MAI–Cr.2d 3.60"—limiting the State's evidence showing defendant had committed other crimes.

■■■ This point has not been very well briefed. Present counsel's reference to a "guiding instruction" "such as MAI–Cr.2d 3.60" leaves to speculation whether he means MAI–Cr.2d 3.58 or MAI–Cr.2d 3.60 and for what reason failure to request one or the other constituted substandard performance. Whatever appellate counsel on appeal means specifically, failure to request a limiting instruction is not a violation of the ruling in *Spencer v. State of Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), rehearing denied, 386 U.S. 969, 87 S.Ct. 1015, 18 L.Ed.2d 125 (1967), nor is such failure necessarily ineffective assistance of counsel. *Williams v. State,* 712 S.W.2d 404, 407[3] (Mo.App.1986).

■■■ Trial counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. 674, 695, 104 S.Ct. 2052, 2066[12]; *Jackson v. State,* 672 S.W.2d 367, 368[1, 2] (Mo.App. 1984). Nothing before us indicates that trial counsel did not make an objectively reasonable decision not to submit a limiting instruction, and of course an objectively reasonable decision choice not to submit an available instruction does not constitute ineffective assistance of counsel. *Love v. State,* 670 S.W.2d 499, 502 (Mo. banc 1984). The defendant has not dispelled the presumption of effectiveness simply by asserting that a limiting instruction of some sort should have been given, and we conclude the point is without merit.

## V

■■■ In his fifth point, defendant argues that trial counsel was ineffective because he failed to tender MAI–Cr.2d 3.42, which advises the jury of the probative effect of circumstantial evidence. Counsel concedes that this point was decided on direct appeal, *State v. Bannister,* 680 S.W.2d at 148–49[21–24][25], but argues that the point was not presented as a question of due process. It is sufficient to say that an issue considered on direct appeal cannot be relitigated in a post-conviction proceeding under Rule 27.26 even if the litigant has a different theory to suggest. *Windle v. State,* 669 S.W.2d 44, 46[3] (Mo. App.1984); *Medley v. State,* 639 S.W.2d 401, 404 (Mo.App.1982). Point five is ill taken.

## VI

■■■ The defendant's final point, again as we understand it, is that trial counsel was ineffective because he did not object when the trial court assigned a motion to quash the jury panel to an Associate Circuit Judge for hearing. This contention, like the others advanced is somewhat obscure, but as we understand it, defendant now argues that the trial court's disqualification was a disqualification to try the case, rather than a disqualification to hear the motion to quash the jury panel.

Upon trial, defendant asserted that the jury list had not been selected in accordance with the statutes—in this case, §§ 494.230 and 494.240, RSMo 1978—and because the trial court had participated in preparation of the jury list as provided by § 494.230, and "could be called as a witness," the trial court should disqualify itself. Judge Henry did so, and assigned the motion to quash the panel *only* to Associate Circuit Judge Don Killebrew, who heard and denied the motion to quash the panel. Judge Henry did testify at the hearing on the motion to quash. Present counsel contends that Rule 32.10 was violated. Present counsel's objection is that Rule 32.-08 required the trial court to request assignment of a judge to hear the motion to quash.

We find the point to be without merit for three reasons: First, if Judge Henry had knowledge that he was likely to be a witness, he had a duty to disqualify himself. Judicial Canon 3(c)(1)(d); *cf. State v. Blackmon*, 664 S.W.2d 644, 649 (Mo.App.1984); Second, this point falls in the same category as defendant's Point Five. Our Supreme Court ruled that the jury had been properly selected. *State v. Bannister*, 680 S.W.2d at 144. As noted, an issue previously considered on direct appeal cannot be relitigated in a post-conviction proceeding, even though the defendant has a different theory to suggest. Windle v. State, 669 S.W.2d at 46[3]. Third, there is no suggestion, much less proof, of any reasonable probability that a different result would have been reached if trial counsel had objected to Judge Killebrew's hearing the motion to quash the panel. In the absence of any showing of prejudice by trial counsel's performance, ineffective assistance of counsel has not been established.

We find no error in any respect assigned or argued in this court. Accordingly, the judgment of the trial court is affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.