**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ronald Lee BARKER, Defendant-Appellant.**

No. 14001.

Missouri Court of Appeals, Southern District, Division One.

Oct. 17, 1985.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 4, 1985.

William L. Webster, Atty. Gen., Thomas Carter, II, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Holly G. Simons, Columbia, for defendant-appellant.

TITUS, Presiding Judge.

A jury found defendant Ronald Lee Barker guilty of stealing an automobile, a

class C felony, § 570.030.[1] The court sentenced him to a term of four years in the Department of Corrections in accordance with the jury assessment.

On appeal, defendant contends the court erred in overruling his motion for judgment of acquittal at the close of all the evidence because the state did not present sufficient evidence from which the jury could find or infer that "appellant intended to permanently deprive William Steven [sic] Baker of his automobile because appellant was arrested within twenty four hours, had a specific destination, and it is as likely as not that appellant intended to return the automobile."

In ruling on defendant's challenge to the sufficiency of the evidence to support the conviction, we view the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict and disregard all contrary evidence and inferences. *State v. Goddard,* 649 S.W.2d 882, 884[1] (Mo. banc 1983); *State v. Gobble,* 675 S.W.2d 944, 946 (Mo. App.1984). Because the issue is whether the state presented sufficient evidence of defendant's intent, the state's evidence is necessarily circumstantial. Being a circumstantial evidence case, the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence. However, the circumstances need not be absolutely conclusive of guilt and they need not demonstrate impossibility of innocence. The mere existence of other possible hypotheses is not enough to remove the case from the jury. *Goddard,* 649 S.W.2d at 884[2]; *Gobble,* 675 S.W.2d at 946[1]. We determine only whether the evidence, so viewed, is sufficient to make a submissible case from which reasonable jurors could have found defendant guilty as charged. *State v. Dickson,* 691 S.W.2d 334, 336 (Mo. App.1985).

Cast in that light, the evidence showed that on July 24, 1984, about 8:30 p.m.,

Darrell Kohler, with his family and friends, was a passenger in a pickup being driven along Highway BB in Newton County to the "Hornett Spooklight" area. Finding traffic difficult, they turned around for the return trip home about 10:30 p.m. On the way back they stopped to observe what appeared to be a mannequin, but which proved to be a man lying face down. The truck in which Mr. Kohler had been riding was facing west and was parked toward the middle of the road in order to prevent someone from running over the injured individual. The person's head was lying on the highway shoulder, pointed north, with his body stretched out across the highway towards the south. He was barely breathing and did not answer when spoken to. A ripped shirt was all that clothed him. His face was scratched or bruised with blood coming from the mouth, nose, and ears. He had had a leg amputated. Later, he was identified as William Stephens Baker.

Shortly after finding Mr. Baker, Mr. Kohler flagged a car. The vehicle almost hit Mr. Kohler, his family and friends as it tried to go around the parked truck. It finally stopped and the driver was asked to get help. The occupants replied, "You bet," and drove off. The driver was identified in court as the defendant. He was driving a 1973 Maverick, which was later identified as Mr. Baker's car. Half an hour, or possibly longer, after Mr. Kohler discovered Mr. Baker the authorities arrived at the scene.

The Newton County Sheriff's Department received a call at about 11:20 p.m. and a deputy proceeded on BB Highway to half a mile west of where BB Highway and 43 Highway intersect. His investigation revealed a right shoe about six feet from the body, and a left shoe about the same distance from the victim's head on the other side of a barbed wire fence. Found nearby were prosthetic socks, a can of chewing tobacco, a leather strap with a watch clip, a black sock, a pair of jeans, a pair of undershorts, a wallet, and a dollar bill lying on

---

1. Statutory references are to RSMo Cum.Supp. 1984.

the highway. When the emergency medical team arrived, they determined that Mr. Baker was dead. The cause of death could not be established. In response to a call, a deputy sheriff found an artificial leg south of Highway 44 on Highway 43, a distance of 5.7 miles from where the body was found. The artificial leg was positively identified as belonging to the victim, Mr. Baker.

Defendant was arrested in possession of the Maverick about 5:12 p.m. the next day, July 25th in Platte County, an area north of Kansas City. The defendant made a statement after waiving his *Miranda* rights in which he attested that he did not have permission to drive the victim's car. He also stated that after drinking with the victim most of the day on the 24th, he, the victim and Ms. Glenda Stuard went driving around. He went on to state that at some point in the evening he had passed out, but did remember driving away from Mr. Baker. He said that he and Ms. Stuard drove approximately half a mile or so from the scene and got to thinking about it and drove back to where they had left Mr. Baker. At that point, people were there who stopped them and asked them to get the authorities. Defendant admitted no call for help was ever made, and that the artificial leg was thrown out the car window by Ms. Stuard a short distance from where they had left Mr. Baker.

Defendant offered no evidence.

■ Defendant asserts the state's evidence was insufficient to establish that he intended to permanently deprive William Stephens Baker of his automobile. We disagree. Defendant's contention that the prosecutor made a tacit admission that the state had not presented sufficient evidence from which the jury could find the required intent and sought to improperly shift the burden of disproving this element to the defendant is meritless. The prosecutor, in his closing argument, stated:

Second, that the defendant appropriated such property, took such property, for the purpose of withholding it from the owner permanently.

Now, we can only speculate on that because Mr. Barker was arrested late in the afternoon of the 25th. But if we go back and look at his actions of late night on the 24th and all day on the 25th, there's absolutely nothing that's consistent with him not intending to deprive the true owner of that vehicle permanently.

This statement was merely a recognition that the state was relying on circumstantial evidence to prove the required element of intent to permanently deprive, and that none of the evidence before the jury was inconsistent with the state's theory. It is true this statement may have been more artfully phrased so as not to confuse the jury as to the burden of proof or to invite them to speculate. However, defendant made no objection to the prosecutor's statement at trial. Since the trial court will not be held to have committed error for reasons not presented to it [*State v. Perryman,* 520 S.W.2d 126, 132 (Mo.App.1975) ], the appropriateness of this statement is not before us.

As it is clear no "tacit admission" was made by the state, we must consider whether the jury was entitled to conclude that the defendant was guilty of stealing. Stealing is appropriating the "property or services of another with the purpose to deprive him thereof...." § 570.030.1. "Deprive" as defined by § 570.010(8), means "(a) To withhold property from the owner permanently; or (b) To restore property only upon payment of reward or other compensation; or (c) To use or dispose of property in a manner that makes recovery of the property by the owner unlikely." Here the evidence showed that the defendant: (1) allowed Mr. Baker's artificial leg to be thrown from Mr. Baker's vehicle and made no attempt to retrieve it; (2) agreed to seek help for Mr. Baker, and then left him to his fate; (3) drove from Southern to Northern Missouri between the time he deserted Mr. Baker and his arrest, a distance hardly indicative of a short joy ride in a friend's borrowed car; (4) notified no one that he had borrowed Mr. Baker's vehicle; and (5) admitted that he did not have per-

mission to be driving Mr. Baker's car. Such an exercise of dominion and control is sufficient to prove defendant's intent to deprive Mr. Baker of his car. *See, Gobble,* 675 S.W.2d at 947; *State v. Hines,* 595 S.W.2d 762, 763 (Mo.App.1980); *State v. Smith,* 621 S.W.2d 94, 96–97 (Mo.App. 1981).

Judgment affirmed.

FLANIGAN and GREENE, JJ., concur.