STATE of Missouri, Respondent,

v.

Daniel OROPEZA, Appellant.

No. WD 38667.

Missouri Court of Appeals,
Western District.

May 19, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 30, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and KENNEDY and MANFORD, JJ.

BERREY, District Judge.

Daniel Oropeza, defendant, appeals his jury convictions of first degree burglary, § 569.160 RSMo 1986, and second degree robbery, § 569.030 RSMo 1986. This court rejects defendant's three points of error raised on appeal and affirms the convictions.

The following facts will aid the resolution of the issues presented:

On November 7, 1985, Officer Robert McNear of the Boone County Sheriff's Department transported defendant and a companion, Frank Swanson, to Cedar City, Missouri, and at about 5:00 p.m., dropped them at the intersection of U.S. Highway 54 and Business Route 54, approximately one-quarter mile from the north end of the Missouri River bridge at Jefferson City. Defendant and Swanson had eight cents between them and defendant had a gold colored ring.

At 7:45 that evening, Carol Wolfmeier, who was walking into the Safeway store on Dunklin in Jefferson City, noticed two men talking in front of the building; one man who had a beard was standing in the doorway and the other man was standing in front of the building. She did not hear what the men were talking about but noticed the man standing alongside the building spoke with a hispanic accent.

As Wolfmeier tried to enter the store, the bearded man later identified by Wolfmeier as Frank Swanson, grabbed her purse and the other man approached her from behind. Wolfmeier held on tight to the bag and the lights from an approaching pick-up truck frightened the men away.

Anthony Paige testified he was at the Safeway store at the time of the incident and he identified Swanson as the one who grabbed Wolfmeier's purse. Although Paige testified he did not see a second man at the scene during his deposition, at trial he identified defendant as the man who approached Wolfmeier from behind.

Around 7:45–8:00 p.m. that same evening, Jerold Eggen, who was working at his desk in the basement of the Central Dairy warehouse approximately a block and a half from the Safeway store on Dunklin, heard a noise and turned around to find a man he identified as defendant crouched behind him. When Eggen stood up, defendant fell to the ground and asked Eggen for some whiskey. At this point, Eggen testified a man with a black beard sneaked up from behind, attacked him and got him to the ground. The bearded man held Eggen's hand behind his back and tried to break his finger and defendant poked him in the eye. The men demanded money but Eggen said he didn't have any and offered them his ring and watch. Eggen then stood up and broke free and ran for help.

Kenneth Higgins, a Jefferson City police officer who responded to a call at Central Dairy, spoke to Eggen after the incident. Higgins testified Eggen described one of his assailants as Mexican-American with dark hair and a medium build.

Kathy Chasteen testified in the early evening hours of November 7, 1985, at approximately 7:45, as she and David Strange, a business associate of hers, left the Ecco Lounge and Restaurant by way of the back door and walked across the parking lot to the street, she observed two men talking. The men were standing in the parking lot to the right of the door; the parking lot is located about one block away from the Central Dairy. Chasteen and Strange walked east bound on the sidewalk along Dunklin to where Chasteen's car was parked. They heard footsteps and noticed the two men from the parking lot were walking behind them.

Chasteen testified that all at once the two men started running toward them and one of the men shoved her into Strange and then ran back through the parking lot. The other man identified as Frank Swanson grabbed Chasteen's purse which contained

approximately $87. Strange also identified Swanson as the man who grabbed Chasteen's purse and he described the other assailant as having dark hair and a slender build. He testified defendant appeared to have the same build as the man described.

Defendant was stopped and detained by police officers behind the alley near the Central Dairy warehouse. Officer Higgins testified he was called to respond to the alleyway about forty-five to fifty minutes after the Central Dairy call. Defendant identified himself as Jerry Martinez. Defendant was charged with burglary in the first degree, § 569.160 RSMo 1986, for the Central Dairy incident and was charged with robbery in the second degree, § 569.-030 RSMo 1986, for stealing Kathy Chasteen's purse. From a jury conviction on both counts, defendant appeals.

In his first point on appeal, defendant contends the evidence does not support his conviction for second degree robbery in that no witness positively identified him as the person who pushed Kathy Chasteen into David Strange; that no evidence revealed defendant was in possession of the stolen property; and that the evidence failed to establish he acted together with or aided Frank Swanson in the purse snatching.

In reviewing the sufficiency of the evidence, this court determines whether there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt considering only the evidence and inferences reasonably drawn from it which are favorable to the state. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied, Guinan v. Missouri*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). If circumstantial evidence is relied upon by the state, the facts and circumstances must be consistent with defendant's guilt and inconsistent with any reasonable theory of his innocence; however, such evidence does not need to be absolutely conclusive of guilt or demonstrate the impossibility of innocence. *State v. Barker*, 700 S.W.2d 128, 129 (Mo.App.1985).

■ Here, the jury could have found defendant and Frank Swanson were dropped off at 5:00 p.m. on November 7, 1985, at the north end of the Missouri River bridge and were partners in a crime spree which consisted of three separate criminal acts in a time span of approximately forty-five minutes to an hour. Two witnesses, Carol Wolfmeier and Anthony Paige identified Frank Swanson in the attempted robbery at the Safeway store. The jury heard the evidence concerning the discrepancy of Anthony Paige's identification of defendant at the Safeway store; it is within the province of the jury to determine the facts based on conflicting testimony; *State v. Danforth*, 654 S.W.2d 912, 915 (Mo.App.1983), and the jury could have believed Anthony Paige's testimony identifying defendant at the scene.

Jerold Eggen identified defendant as the man crouched behind his chair in the basement of the warehouse and described the other man as having a beard, a similar characteristic described by both Wolfmeier and Paige at the earlier attempted robbery. Chasteen and Strange who were victims of the Ecco Restaurant and Lounge incident also positively identified Frank Swanson and described his accomplice as having dark hair. Strange further testified defendant appeared to have the same build as the man who pushed him into Chasteen.

These crimes were committed in close proximity in time and space. The inference that Frank Swanson found a new accomplice between the Central Dairy incident and the Ecco Restaurant and Lounge purse snatching is unlikely under the temporal and proximal circumstances, *see State v. Means*, 628 S.W.2d 426, 428 (Mo.App.1982), and defendant did not present any evidence to support such a theory.

Defendant was charged with robbery in the second degree under § 569.030 RSMo 1986, which requires he "forcibly steal" property. A person "forcibly steals" when, in the course of stealing, he uses or threatens the immediate use of physical force upon another person for the purpose of:

(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

█ The evidence supports the reasonable inference that defendant was in active participation with the crime defined above at the Ecco Lounge. A person, like defendant, who acts with common purpose with an active participant in the crime (such as Frank Swanson who was positively identified at the crime scene) incurs criminal liability by any form of affirmative advancement of the enterprise. *State v. Gannaway,* 649 S.W.2d 235, 239 (Mo.App. 1983).

> The court in *State v. Gannaway,* noted: The state's proof to effect a proper conviction need not show that defendant personally committed every essential element of the crime. Among other things, indicia of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime. Proof of any form of participation by defendant in the crime is enough to support a conviction and his presence at the scene, his companionship and conduct before and after the offense are circumstances from which one's participation in the crime may be inferred. (Citations omitted.)

*Id.* We conclude there was sufficient evidence in the record to support defendant's conviction of second degree robbery under the facts presented.

█ Defendant next assigns as error that the evidence failed to establish defendant "knowingly entered unlawfully" in the Central Dairy required for the crime of first degree burglary under § 569.160.1. An unlawful entry occurs when a person enters without the license or privilege to do so. § 569.010 RSMo 1986; *State v.*

*McGinnis,* 622 S.W.2d 416, 419 (Mo.App. 1981). There was evidence that the door through which defendant entered was located in an alley and was used as an employee entrance. Deliverymen also used this entrance as it was designated for milk receiving. No evidence was presented that it was used as a general access for the public. Furthermore, defendant's actions of sneaking up on Jerold Eggen and crouching behind his chair were not indicative of someone who entered for lawful purposes.

Finally, defendant contends that the trial erred in permitting Carol Wolfmeier to testify regarding the Safeway store incident in that this evidence was evidence of another uncharged crime unrelated to the offenses for which defendant was charged; he alleged the introduction of the evidence violated his constitutional rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, § 18(a) of the Missouri Constitution.

█ Defendant filed a Motion in Limine to prevent the admission of this testimony and properly objected to the testimony at trial and raised the issue in his motion for new trial; however, defendant did not object to the admission into evidence of Anthony Paige's testimony concerning the same incident. Thus, it would be unnecessary for this court to address this point. *See State v. Rayford,* 646 S.W.2d 137, 141 (Mo.App.1983). However, we note that evidence of other crimes is admissible when it is relevant to establish "motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other or identity of the person charged." *State v. Trimble,* 638 S.W.2d 726, 732 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983). The evidence of the attempted robbery at the Safeway store tended to show the continuity of the partnership of Swanson and the defendant in a crime spree in a limited geographical

area. This court finds no prejudice by its admittance.

Judgment affirmed.

All concur.