STATE of Missouri, Respondent,

v.

Orlando M. NAYLOR, Appellant.

No. SC 95847

Supreme Court of Missouri,
en banc.

Opinion issued March 14, 2017

Naylor was represented by Casey A. Taylor of the public defender's office in Columbia, (573) 777-9977.

The state was represented by Dora Fichter of the attorney general's office in Jefferson City, (573) 751-3321.

George W. Draper III, Judge

Following a jury trial, Orlando Naylor (hereinafter, "Naylor") was convicted of first-degree burglary, section 569.160, RSMo 2000,[1] misdemeanor stealing, section 570.030, and driving while revoked, section 302.321. The circuit court sentenced Naylor as a prior and persistent offender to fifteen years' imprisonment for burglary, one year imprisonment for stealing, and seven years' imprisonment for driving while revoked, to be served concurrently.

Naylor raises three points on appeal. Naylor claims, in two separate points, there was insufficient evidence to support his conviction for first-degree burglary. Naylor further claims the circuit court abused its discretion by erroneously admitting testimony that demonstrated Naylor's propensity to engage in criminal activity. The circuit court committed no error; the judgment is affirmed.

**Factual and Procedural Background**

On May 15, 2014, two employees at the Farm Fresh Milk Store in Collinsville, Illinois, were closing the store for the day and noticed that the change bag was missing. The change bag usually was kept in the back office, which had a sign stating, "Employees only." The employees then viewed their security cameras. An outside security camera showed a car back up to the side of the building at about 2:30 p.m. The car's driver then entered the building. The inside security camera showed the driver went through the store and into the office. The driver searched the desk and filing cabinet where the change bag usually was kept. Upon discovering the change bag, the driver removed the money, went back into the store area, and made a purchase prior to leaving.

After viewing the store's security camera video, the employees called the police. Detective Christopher Warren of the Collinsville Police Department investigated the theft. After viewing the security camera video, he identified the vehicle as a two-door Pontiac Grand Prix. The vehicle was a burnt orange color with "purplish" color stripes. The driver appeared to be wearing light tan pants and a baseball cap.

Also on May 15, 2014, the cook (hereinafter, "Cook") at the Sandwich Shop in Collinsville, Illinois, observed a man in the kitchen at 3 p.m. Cook stated he was the only person allowed in the kitchen, and Cook asked the man what he was doing in the kitchen. The man asked if the Sandwich Shop was hiring. Cook informed him that they were not hiring. Cook noted that the man in the kitchen spoke with a low, raspy voice. The man then departed through the back door.

Another employee from the Sandwich Shop followed the man out the back door and observed him getting into a burnt orange-colored vehicle. That employee recorded the first part of the license plate as "PH5" and noted that there was also a "6" on the license place.

On May 16, 2014, Melissa Giesler (hereinafter, "Giesler") arrived to work in the early morning at Missy's Family Restaurant in Ozora, Missouri. Missy's Family Restaurant had an office that had an "Office" sign on the door. In front of the office, there was a place to hang clothes and some filing cabinets. The office was inaccessible from outside the building; one had to go through an interior hallway to enter it. The nearest exterior door to the office was a side door, which was kept locked and not used by the general public. That side door could only be unlocked from inside the building, and it was acces-

---

1. All further statutory references are to RSMo 2000.

sible through a storeroom that was off of the office.

When Giesler arrived at work, she went into the office and placed her purse on a desk. After the restaurant closed that night, Giesler returned to the office and noticed that $165 was missing from her purse. Giesler also noticed that the side door was unlocked.

Giesler contacted Mitzi Aufdenberg (hereinafter, "Aufdenberg"), the general manager of the nearby Ozora Truck Stop, inquiring as to whether she could look at the truck stop's surveillance tapes. Aufdenberg was able to view some of the surveillance video immediately, but she was unable to view the full surveillance video until the following day. The surveillance video showed a person parking a vehicle at the Ozora Truck Stop, getting out, and walking out of view. Shortly thereafter, the same person returned to the vehicle. Further, the person who exited Missy's Family Restaurant by the side door had the same appearance as the person who had parked at the Ozora Truck Stop.

On May 30, 2014, Officer Jerod Darnell (hereinafter, "Officer Darnell") stopped a car for a traffic violation. The car was a 2001 Pontiac Grand Prix with the license plate "PH5 U6Y." Naylor was the driver. Officer Darnell's partner recognized Naylor's car as matching the description of the Missy's Family Restaurant surveillance video. Naylor was placed under arrest and consented to a vehicle search. Detective Austin Clark (hereinafter, "Detective Clark") was called and arrived on the scene. Detective Clark searched Naylor's car, discovering $675 in cash and a baseball cap.

Subsequently, Detective Clark interviewed Naylor. Detective Clark showed Naylor pictures from the surveillance video at Missy's Family Restaurant, but Naylor denied being the person in the video and maintained he had nothing to do with the crime. Naylor acknowledged the baseball cap was his and explained the cash was from poker winnings and money given to him by his girlfriend.

During their investigation, the police provided the surveillance video from the Farm Fresh Milk Store and Missy's Family Restaurant to Randy Lee Schott (hereinafter, "Schott"), a body shop manager. Schott examined the surveillance video. Schott was able to identify the car in both videos. He noted the car had the same damage and aftermarket additions. Schott determined that, based upon the car's specific characteristics, the cars depicted "appear similar."

Naylor was charged as a prior and persistent offender with one count of first-degree burglary, one count of stealing, and one count of driving with a revoked license. The state charged that Naylor committed first-degree burglary on May 16, 2014, when he knowingly and unlawfully entered a room in Missy's Family Restaurant not open to the public.

The jury found Naylor guilty of first-degree burglary, misdemeanor stealing, and driving while revoked. Naylor appealed. This Court has jurisdiction pursuant to article V, section 10, of the Missouri Constitution.

### First-degree burglary

Naylor claims there was insufficient evidence presented at trial to convict him of first-degree burglary. Naylor asserts there was insufficient evidence presented from which the jury could have found beyond a reasonable doubt that he knowingly entered unlawfully into an area of Missy's Family Restaurant and that another person was present in the structure.

To determine whether the evidence presented was sufficient to support

a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but, rather, "accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *State v. Holmes*, 399 S.W.3d 809, 812 (Mo. banc 2013) (quoting *State v. Latall*, 271 S.W.3d 561, 566 (Mo. banc 2008)). "This Court's review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Letica*, 356 S.W.3d 157, 166 (Mo. banc 2011). "This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder 'could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (quoting *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010)). "In reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court 'does not act as a "super juror" with veto powers' but 'gives great deference to the trier of fact.'" *State v. Jones*, 479 S.W.3d 100, 105 (Mo. banc 2016) (quoting *State v. Miller*, 372 S.W.3d 455, 463 (Mo. banc 2012)).

The offense of first-degree burglary occurs when a person "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Section 569.160.1. Additionally, one of the following three circumstances exists: (1) the person is armed with a deadly weapon; (2) the person causes or threatens immediate physical injury to any person who is not a participant in the crime; or (3) another person, who is not a participant in the crime, is present in the structure. *Id.*

## Knowingly Entered Unlawfully

■ Naylor asserts there was insufficient evidence presented from which a juror could conclude that he knowingly entered unlawfully into the office area of Missy's Family Restaurant. Naylor claims the state failed to demonstrate that he knew he was not allowed to be in the office area because the sign on the door to the office only stated, "Office," and there was no indication that restaurant patrons were prohibited from entering.

■ A person enters or remains unlawfully on a property "when he [or she] is not licensed or privileged to do so." Section 569.010(8). "A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public." *Id.* "Knowledge is typically inferred from circumstantial evidence because direct evidence is rarely available." *State v. Hunt*, 451 S.W.3d 251, 257 (Mo. banc 2014).

■ One indication that a defendant knowingly enters unlawfully is whether there is signage, which would demonstrate the area is not open to the public. In *State v. Norfolk*, 745 S.W.2d 737, 738 (Mo. App. E.D. 1987), the defendant was found in a non-public stock room at a department store. The stock room was located at the back of the department, and the door to the room stated, "Authorized Personnel Only." While the defendant had a license or privilege to be in the department store, he did not have the right to be in the non-public area of the stock room. There was sufficient evidence that the stock room was not open to the public. *Id.*

Yet, signage indicating that an area is not open to the public does not need to be as explicit as in *Norfolk*. In *State v. Girar-*

*dier*, 484 S.W.3d 356, 360 (Mo. App. E.D. 2015), the male defendant was convicted of first-degree trespass because he "knowingly enter[ed] unlawfully or knowingly remain[ed] unlawfully" in a women's restroom. The evidence established that there were separate restroom facilities for men and women that were marked clearly. *Id.* at 362. Because the defendant knowingly entered an area of the building where he was not permitted to be, his status changed from an invitee to a trespasser. *Id.*

Conversely, when there is no signage to demonstrate that an area of a public building is not open to the public, it is possible that a person may not "knowingly enter unlawfully." In *State v. Weide*, 775 S.W.2d 255, 256 (Mo. App. W.D. 1989), the defendant entered a restaurant in a manner that was loud, profane, obnoxious, and threatening. The restaurant manager asked the defendant to leave, but when the defendant refused, the restaurant manager stated he would call the police. *Id.* The defendant, still shouting threats and profanity, chased the restaurant manager into the kitchen. *Id.* The court found that the state failed to prove that the defendant "knowingly unlawfully entered" the restaurant's kitchen because there was no visible sign indicating that either the public was prohibited from entering or even what was behind the door. *Id.* at 259. While many people understand that the public is not invited to enter a restaurant's kitchen, it "does not, however, remove the reasonable possibility that one might find restrooms or another public portion of the restaurant behind the unmarked door." *Id.* at 258. Accordingly, the state failed to establish that the defendant knowingly entered unlawfully. *Id.* at 259.

Similarly, in *State v. Brown*, 457 S.W.3d 772, 780 (Mo. App. E.D. 2014), there was insufficient evidence that the defendant knowingly entered unlawfully into the sacristy of a Catholic church. There was evidence explaining that the sacristy is not open to the public generally but is open to those participating in the church service and to any person wishing to speak with a priest or participant. *Id.* The two entry doors to the sacristy were not locked, and the interior door leading to the altar was open. *Id.* Further, there was no signage "that would inform a person that the door led to a private area rather than to a public area." *Id.* at 781. Accordingly, there was insufficient evidence to conclude that the defendant knowingly entered unlawfully. *Id.*

Whether a defendant knowingly enters unlawfully can depend upon the defendant's conduct and whether the defendant attempts to conceal his or her activity. A defendant's conduct "relevant to show a consciousness of guilt or a desire to conceal the offense [is] admissible because [it] tend[s] to establish the defendant's guilt of the charged crime." *State v. Barton*, 998 S.W.2d 19, 28 (Mo. banc 1999).

In *State v. Oropeza*, 735 S.W.2d 2, 5 (Mo. App. W.D. 1987), the defendant asserted there was insufficient evidence to find he knowingly entered unlawfully to commit first-degree burglary. The warehouse door through which the defendant entered was used by employees and deliverymen; there was no evidence that it was an entrance for the general public. *Id.* However, once inside the warehouse, the defendant snuck up on the victim and crouched between chairs to conceal his presence. *Id.* The defendant's actions "were not indicative of someone who entered for lawful purposes." *Id.*; *see also Girardier*, 484 S.W.3d at 362 (finding the defendant's attempt to conceal his presence in the women's restroom by speaking in a female tone of voice demonstrated his

knowledge that he was not supposed to be there).

In this case, it is clear that Naylor knowingly entered unlawfully into the office of Missy's Family Restaurant. The only accessible entrance to the restaurant's office was from the public area of the restaurant. The door clearly was marked, "Office," at the end of a hallway leading away from the restaurant portion of the building, and past the area for employees' coats and lockers, indicating that it was a non-public area of the building. An office is not an area of a restaurant that a reasonable person would expect to be open to the public. Further, restaurant patrons typically park in the parking lot of that establishment. Naylor did not park outside Missy's Family Restaurant; instead, he parked at a nearby gas station and then walked to Missy's Family Restaurant. The combination of the signage on the office door and Naylor's furtive action of parking at a different business indicate that he knowingly entered unlawfully into the office of Missy's Family Restaurant. On these facts, it was up to the jury to determine whether the office was not an area of a restaurant that a reasonable person would expect to be open to the public and whether Naylor knowingly entered it unlawfully. This was sufficient evidence to convict Naylor of first-degree burglary.

### Presence of Another in the Structure

■ Naylor asserts that there was insufficient evidence to demonstrate that another person, not a participant in the crime, was present in the building to support his first-degree burglary conviction. Naylor claims the state failed to prove that anyone was present in the office at the time of the crime. Naylor cites *State v. Washington*, 92 S.W.3d 205 (Mo. App. W.D. 2002), as being dispositive of this issue.

In *Washington*, the defendant was charged with first-degree burglary based upon the allegation that he entered into a garage and removed tools while the victims were present in the home. *Id.* at 207. The court found that the garage did not qualify as part of the home's inhabitable structure under section 569.010(2). *Id.* at 209. The garage the defendant entered was attached to the home's structure, but the garage and the home's living space were not connected by an interior door. *Id.* The court stated, "it appears that one of the evident purposes behind the first-degree burglary statute is to increase the penalty for someone who puts an innocent in harm's way during a burglary." *Id.*

Naylor extrapolates from *Washington*, arguing that because the office was in a private portion of the restaurant building, it similarly was disconnected from the restaurant's public area, and he could not be guilty of first-degree burglary. Naylor's reasoning is faulty.

First, *Washington* makes a clear distinction between the garage's structure and the house's living space, finding they were separate building structures. *Washington*, 92 S.W.3d at 209. Because there was no one else present in the garage who was not a participant in the crime, the defendant did not meet the statutory requirements of first-degree burglary. Section 569.160.1(3).

Second, section 569.010(8) contemplates that one building may contain both public and private areas. Thereby, Naylor's assertion that a private office must be completely separate from the public portions of the building is without merit.

Our courts have found consistently that when there is another person in the building, as compared with the room as asserted by Naylor, there is sufficient evidence to support a charge of first-degree burglary. *See State v. Bowman*, 311 S.W.3d 341,

347 (Mo. App. W.D. 2010) (concluding there was sufficient evidence to support a first-degree burglary conviction in that common areas in an apartment building may constitute part of the apartment); *State v. Walker*, 693 S.W.2d 237, 239 (Mo. App. S.D. 1985) (finding the defendant committed first-degree burglary when he knowingly entered unlawfully to commit a crime in a floral shop while there were other people present in the building's living quarters because the floral shop and the living quarters were "integral parts of the same structure").

In this case, Giesler was present in the building while Naylor entered the office of the same building. The office for the restaurant and the restaurant were integral parts of the same building. The office was located at the back of the building down a hallway. Because the undisputed evidence established that Giesler was in the restaurant during the incident, the state presented sufficient evidence that Naylor and another person, not participating in the crime, were present in the same building as required by section 569.160.1(3). The circuit court did not err.

### Evidence of Uncharged Misconduct

■ Naylor claims the circuit court abused its discretion in allowing testimony regarding the theft and attempted theft in Illinois that occurred on May 15, 2014. Naylor asserts that this evidence had no legitimate tendency to establish his guilt for the theft at Missy's Family Restaurant, was more prejudicial than probative, and was presented only to demonstrate he had a propensity to commit burglaries of businesses.

■ Circuit courts retain wide discretion over issues of relevancy and admissibility of evidence. *State v. Blurton*, 484 S.W.3d 758, 769 (Mo. banc 2016). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *State v. Collings*, 450 S.W.3d 741, 756 (Mo. banc 2014) (quoting *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010)). The circuit court's "discretion will not be disturbed unless it is clearly against the logic of the circumstances." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011) (quoting *State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009)). On direct appeal, "this Court reviews the trial court 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. Forrest*, 183 S.W.3d 218, 223-24 (Mo. banc 2006) (quoting *State v. Middleton*, 995 S.W.2d 443, 452 (Mo. banc 1999)).

■ Generally, "proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he [or she] is on trial." *State v. Vorhees*, 248 S.W.3d 585, 587 (Mo. banc 2008). "Evidence of uncharged misconduct is absolutely inadmissible if offered solely for the purpose of showing that the defendant has a propensity to commit the crime charged because this would violate the defendant's right to be tried only for the crimes charged under Article I, sections 17 and 18(a) of the Missouri Constitution." *State v. Williams*, 502 S.W.3d 90, 98 (Mo. App. E.D. 2016).

■ There are, however, "exceptions under which otherwise inadmissible evidence may be admitted." *Primm*, 347 S.W.3d at 70. This evidence may be admissible if it tends to establish: "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5)

the identity of the person charged with commission of the crime on trial." *Id.* Evidence "of uncharged crimes that is part of the circumstances or the sequence of events surrounding the offense charged may be admissible 'to present a complete and coherent picture of the events that transpired.'" *State v. Schneider*, 483 S.W.3d 495, 505 (Mo. App. E.D. 2016) (quoting *Primm*, 347 S.W.3d at 70).

In this case, the surveillance video from Missy's Family Restaurant only revealed the general appearance of the suspect and his car. Naylor denied that he was the person on the surveillance video at Missy's Family Restaurant. Therefore, the suspect's identity was at issue.

The state admitted the evidence from the crimes in Illinois to establish Naylor as the person who committed the theft at Missy's Family Restaurant. The evidence from the crimes in Illinois focused on the similarities between the suspect's vehicle, appearance, and voice on the day before the theft at Missy's Family Restaurant.

Following a theft at the Farm Fresh Milk Store, the employees and Officer Warren observed the suspect get into a burnt orange car with "purplish" stripes. Shortly thereafter, another burnt orange car was spotted outside the Sandwich Shop after a man was found in the kitchen. At the Sandwich Shop, one of its employees also recorded most of the license plate number. The car Naylor was driving when he was arrested matched the description of the car at the Farm Fresh Milk Store, the Sandwich Shop, and Missy's Family Restaurant. Further, Schott testified that, based upon all of the surveillance videos and Naylor's car, each car depicted was a 2001 Pontiac Grand Prix, similar in color, with custom stripes and rocker moldings and damage to the rear driver's side quarter panel.

The Farm Fresh Milk Store employee and Officer Harrison testified that the appearance of the person in the Farm Fresh Milk Store surveillance video wore a baseball cap. Officer Harrison further testified that his appearance was "consistent" with the appearance of the man in the surveillance video at Missy's Family Restaurant. A baseball cap, which was similar in appearance to the one in the surveillance videos, was found in Naylor's car. Naylor admitted the baseball cap belonged to him.

Further, Cook heard the man in the kitchen speak with a distinctive voice. After listening to a voice recording of Naylor for the first time at trial, Cook was able to identify Naylor as the same man who was in the kitchen. Detective Warren also testified Naylor's voice was "gravelly," "scratchy," and "deep."

Cumulatively, the Illinois incidents coupled with the surveillance video at Missy's Family Restaurant tended to establish Naylor's identity. Any additional facts presented at trial were merely to explain to the jury the circumstance of Naylor's identification. "It would be confusing to the jury to present the identification testimony ... without presenting the circumstances of the identification." *State v. Jackson*, 228 S.W.3d 603, 607 (Mo. App. W.D. 2007).

Finally, the jury was instructed that if it believed Naylor was involved in any offense other than the one for which he was on trial, it could only consider that evidence "on the issue of identification, motive, intent, absence of mistake or accident or presence of a common scheme or plan." The instruction also indicated that the jury could not consider that evidence for any other purpose. A "jury is presumed to know and follow the instructions." *State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999); *see also State v. Whitfield*, 107 S.W.3d 253, 263 (Mo. banc 2003). The cir-

cuit court did not abuse its discretion in admitting this evidence.

## Conclusion

The circuit court's judgment is affirmed.

Breckenridge, C.J., Fischer, Stith, Wilson and Russell, JJ., concur.