

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,

                **Respondent,**

v.

ERIN GRAVES,

                **Appellant.**

**WD83058**

**OPINION FILED:**

**August 11, 2020**

Appeal from the Circuit Court of Cass County, Missouri
The Honorable R. Michael Wagner, Judge

Before Division One:
Lisa White Hardwick, P.J., Cynthia L. Martin, C.J., and Thomas N. Chapman, J.

Erin Graves ("Graves") appeals from the judgment entered by the Circuit Court of Cass County, Missouri ("trial court"), following a jury trial in which he was found guilty of one count of burglary in the first degree pursuant to section 569.160[1], and one count of stealing pursuant to section 570.030. He challenges the sufficiency of the evidence to support his burglary conviction. We affirm.

---

[1] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as updated through the 2017 Supplement.

**Facts and Procedural History[2]**

ADESA Auto Auction ("ADESA") in Belton, Missouri conducts wholesale auctions, where dealers buy and sell automobiles. On January 2, 2018, ADESA conducted an auction that included the sale of Harley-Davidson motorcycles. During that auction, Corenzo Templeton and Jeffery Butler were working in the detail shop when two men wearing winter clothes and masks covering their faces walked in and asked Templeton if two of the Harley-Davidson motorcycles ran. Believing the two men were dealers, Templeton replied that they did run and went back to detailing other motorcycles to be sold at the auction. Butler, a motorcycle inspector, noticed that the two men were wearing orange vests similar to those of temporary workers ADESA hires for auctions. Despite the vests, Butler was uncomfortable with the men moving the motorcycles because he did not recognize the men and only certain qualified people were authorized to perform that task. As Butler called his safety manager to ask about them being moved, the two men left through an overhead door, drove toward the front gate, and exited the grounds.

The two men were later identified as Christopher Gaucin ("Gaucin") and appellant Graves. After leaving ADESA, they eventually headed South on Interstate 49. Graves ran out of gas and stopped at a Love's Truck Stop along the way, while Gaucin continued on. As Gaucin approached Archie, Missouri, Dylan Allison (an Archie police officer) began following Gaucin's motorcycle (as he noticed it did not have a license plate). Gaucin then "took off at a high rate of speed"; wrecked the motorcycle while crossing a railroad track; fled on foot; and was ultimately

---

[2] "When considering the sufficiency of the evidence on appeal, … [t]he evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *State v. Carter*, 600 S.W.3d 309, 311 (Mo. App. S.D. 2020)

apprehended and taken into custody. The motorcycle being operated by Gaucin had a VIN number that matched one of the motorcycles stolen from ADESA.

Graves later arrived at the home of Sean Oriley in possession of the black Harley-Davidson that had been taken from ADESA. Graves told Oriley that he and his "buddy" stole the motorcycles and that they were running from law enforcement. Oriley told Graves that he and the motorcycle could not stay at his home. Graves removed the seat in order to detach a battery cable connected to the bike's GPS device (to prevent it from being tracked), and Oriley placed the seat in his barn. John Kopheer subsequently picked up the motorcycle (missing its seat).

Steven Runsik picked up Graves and took him back to Runsik's home in Archie, Missouri. Graves told Runsik that he and Gaucin had stolen two Harley-Davidson motorcycles from the Belton auction by telling workers they were moving the bikes and then just driving away. Graves further indicated that he had run out of gas and stopped at a Love's Truck Stop, while Gaucin continued on; and that Gaucin had been apprehended by the police after wrecking the other bike. During this conversation, Runsik recorded Graves and then later turned the recording over to law enforcement.[3]

ADESA later provided Detective Jeff Richardson (of the City of Belton Police Department) surveillance footage showing two males riding Harley-Davidson motorcycles off of the ADESA property shortly after the motorcycles were taken from the detail shop. Runsik provided Detective Richardson the recording of Graves admitting he had stolen the motorcycle.

---

[3] A redacted audio recording was played for the jury during the State's case in chief.

The State charged Graves, as a prior and persistent offender, with one count of first-degree burglary and one count of stealing. A jury trial was held, at which Templeton, Butler, Officer Allison, Runsik, Oriley, and Detective Richardson testified. The jury found Graves guilty on both counts. Graves filed a motion for new trial, arguing that there was insufficient evidence to support his burglary conviction. The trial court overruled his motion and sentenced Graves to concurrent prison terms of ten years on the charge of burglary, and seven years on the charge of stealing.

Graves appeals his burglary conviction, and does not appeal his stealing conviction.

**Analysis**

In his sole point on appeal, Graves argues that there was insufficient evidence to support his conviction of burglary in the first-degree, in that "there was not sufficient evidence to show that Mr. Graves or an accomplice knowingly entered the ADESA Auto Auction or the detail shop of the auction unlawfully."

"To determine whether the evidence presented to the court was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *State v. Holmes*, 399 S.W.3d 809, 812 (Mo. banc 2013) (citation and internal quotation marks omitted). "This Court asks only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty." *Id.* (citation and internal quotation marks omitted). "The assessment is not whether this Court believes that the evidence established guilt beyond a reasonable doubt but, rather, whether, in light of the evidence most favorable to the verdict, any rational fact-finder could have found guilt beyond a

4

reasonable doubt." *State v. Martin*, 575 S.W.3d 764, 767 (Mo. App. W.D. 2019) (citation omitted).

"A person commits the offense of burglary in the first degree if he or she knowingly enters unlawfully ... a building ... for the purpose of committing an offense therein, and ... while in the building[,] ... [t]here is present in the structure another person who is not a participant in the crime." § 569.160. A person enters unlawfully "when he or she is not licensed or privileged to do so." § 569.010(2). "A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public." *Id.* "Knowledge is typically inferred from circumstantial evidence because direct evidence is rarely available." *State v. Naylor*, 510 S.W.3d 855, 859 (Mo. banc 2017) (citation omitted). "Whether a defendant knowingly enters unlawfully can depend upon the defendant's conduct and whether the defendant attempts to conceal his or her activity. A defendant's conduct 'relevant to show a consciousness of guilt or a desire to conceal the offense [is] admissible because [it] tend[s] to establish the defendant's guilt of the charged crime." *Id.* at 860 (citing *State v. Barton*, 998 S.W.2d 18, 28 (Mo. banc 1999)).

Graves argues that the evidence presented at trial fails to establish that the auction (particularly the detail shop) was closed to the public because (1) there was no signage indicating that the area was closed to the public, and (2) there was testimony presented at trial that "a lot of people come through there on the [sic] daily."

In *State v. Naylor*, the Missouri Supreme Court held that gaining access to an area not open to the public through concealment indicates a defendant's knowledge of entering unlawfully. 510 S.W.3d 855, 860 (Mo. banc 2017). This conduct of concealment is admissible to "establish the defendant's guilt of the charged crime." *Id.* (citation omitted). The defendant in

5

*Naylor* parked at a nearby business and entered an area marked "Office." *Id.* at 861. Despite the absence of an "Employees Only" sign, the court found the label "Office" would have signaled a reasonable person that the area was not open to the public. *Id.* The *Naylor* Court concluded that this evidence was sufficient to support the defendant's first-degree burglary conviction:

> The combination of the signage on the office door and Naylor's furtive action of parking at a different business indicate that he knowingly entered unlawfully into the office…. On these facts, it was up to the jury to determine whether the office was not an area of a restaurant that a reasonable person would expect to be open to the public and whether Naylor knowingly entered it unlawfully.

*Id.*

In reaching its conclusion in *Naylor*, the Supreme Court cited *State v. Oropeza*, 735 S.W.2d 2 (Mo. App. W.D. 1987), where our court found sufficient evidence to support a determination that the defendant had knowingly entered a warehouse unlawfully. *Id*. at 5. In *Oropeza*, entrance was gained through an alleyway door generally used by employees and deliverymen (not by the general public). *Id.* In *Oropeza*, we indicated that the defendant's acts of concealing himself after entering the building (hiding behind an employee's chair) evinced an unlawful purpose for entering the structure. *Id.* In *Oropeza* our court found the evidence was sufficient to support the jury's determination that the defendant knowingly entered unlawfully. *Id.*[4]

Similar to the office in *Naylor*, in the instant matter, there was sufficient evidence from which a reasonable juror could conclude that the detail shop was an area not open to the general public. Butler (and others) testified that only auto dealers were allowed to buy and sell at

---

[4] *See also State v. Girardier*, 484 S.W.3d 356, 362 (Mo. App. E.D. 2015) (holding the defendant's actions of disguising his voice in a female tone demonstrated "consciousness of guilt" and constituted "knowledge that [the defendant] remained in the women's restroom unlawfully.").

ADESA auctions. Butler testified that only "certain persons" were allowed in the detail shop to move motorcycles. Even though Gaucin and Graves were wearing the vests that ADESA workers wear, Butler was immediately uncomfortable with them because he did not recognize them as being among the "normal people" that were qualified to move the motorcycles.[5]

Graves's "furtive actions" (concealing his face, wearing a temporary worker vest, and lying about his purpose in moving the motorcycles) indicated that he knew he was not allowed in the detail shop.[6] *See Oropeza*, 735 S.W.2d at 5. As in *Oropeza*, Graves's conduct supports the inference that he knew that he was unlawfully entering a restricted area within the ADESA property (for the purpose of stealing).

Graves contends it is also possible that such conduct was an effort to avoid suspicion while he and Gaucin attempted to remove the motorcycles from the property; and that such

---

[5] Butler testified at trial as follows:

Q. What in particular made you feel that you needed to call him?

A. Because I didn't feel comfortable them moving the bikes because normally there is only certain people that move bikes and I didn't recognize these two and so -- then there was snow on the ground so we don't leave any bikes in the snow or ice. …

Q. You said it was weird that they were transporting these bikes. Why was it weird on that occasion to you?

A. Because they weren't the normal people. There was only a couple of people that moved bikes around on the lot because you needed to be qualified to ride a bike and I didn't recognize these two. They both had on orange vests, you know, like everybody wears.

[6] With regard to Graves and Gaucin's face coverings, Templeton testified as follows:

Q. Now, at some point that afternoon did two gentlemen come in the detail shop to get two motorcycles?

A. Yes.

Q. Can you describe what you remember about that?

A. I remember one guy was tall and one guy was small and they both had masks on their faces.

7

conduct does not definitively indicate that they needed the temporary employee uniforms to gain access to the detail shop. Even if this alternative inference were plausible, "[a]n appellate court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *State v. Chaney*, 967 S.W.2d 47, 53 (Mo. banc 1998) (citation and internal quotation marks omitted).

The State presented sufficient evidence from which a "rational fact-finder could have found the essential elements of the crime [of first-degree burglary] beyond a reasonable doubt." *Naylor*, 510 S.W.3d at 859 (citation and internal quotation marks omitted). In particular, there was sufficient evidence from which the jury could have found, beyond a reasonable doubt, that Graves knowingly entered unlawfully the ADESA detail shop for the purpose of committing the crime of stealing therein. § 569.160.

Graves's sole point on appeal is denied.

### Conclusion

The trial court's judgment is affirmed.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Judge

All concur.